# ATLANTIC AND BIRMINGHAM RAILWAY COMPANY *v.* MAYOR AND CITY COUNCIL OF CORDELE.

1. The general principles of law touching the power of a municipal corporation, under proper charter authority, to require a shifting of the tracks of a railroad company from one part of a street to another, provided this is not unreasonably or arbitrarily done, but is really for the convenience and welfare of the public, is determined in *Macon R. Co.* v. *Macon,* 112 *Ga.* 782.

2. The powers of the Mayor and City Council of Cordele, contained in the charter of that city, are sufficiently broad to fall within the decision in the case cited in the preceding note.

3. Whether a municipal corporation would have authority to enforce against a railroad company the expense of removal of its tracks, if one should take place, need not now be determined.

4. The presiding judge who heard the issues involved in the application for injunction, including the questions of whether the required removal was in fact for the convenience and welfare of the public or only for the benefit of another corporation, whether there was a necessity for the proposed change, whether the proposed act would be unreasonable or arbitrary, and what would be the effect, if any, upon the operation and property of the plaintiff, having stated, in his order refusing to grant an injunction, that he heard evidence and argument, and also that "This order [is] granted after a personal inspection and observation of the tracks and surroundings of the street crossing and tracks involved," and it thus appearing that the judge's personal inspection and observation were made an integral part of his judgment, and it not appearing that this was done with the consent of counsel or parties, the judgment will be reversed, with direction that the case be heard upon the evidence which may be introduced, unless inspection by the judge as part of the proceedings be had with the consent of both parties.

Argued February 21,—Decided May 14, 1906.

Petition for injunction. Before Judge Littlejohn. Dooly superior court. September 6, 1905.

The Atlantic and Birmingham Railway Company filed its equitable petition against the Mayor and Council of Cordele, alleging, in brief, as follows: Prior to the extension of its road to the City of Cordele, it obtained the written consent of the mayor and council, and entered into a contract with them, whereby it was granted the right to construct, maintain, and operate its main line of railroad in and through the city and along Tenth avenue, together with all necessary side-tracks; and thereupon it constructed and has since maintained and operated such tracks. They were located along and in Tenth avenue at a point most practicable and calculated to do the least damage to abutting-property owners, and so as to enable

it to construct, maintain, and operate necessary side-tracks and a transfer track, and also cross two other railroads. If the main line of its road were removed from its present location along Tenth avenue and near to the south side thereof, it would be impracticable for plaintiff to maintain and operate its side-tracks, transfer tracks, and crossings. On June 24, 1905, the mayor and council adopted a resolution requiring the plaintiff to remove its main line of railroad and its side-tracks along Tenth avenue further towards the south side thereof. This was done for the accommodation and convenience of the Seaboard Air-Line Railway in the construction of its new freight depot on the north side of the avenue. On August 2, they passed a resolution providing that if the plaintiff did not change its tracks as required within five days, the city would proceed to have the change made at the plaintiff's expense. Such a change will work serious damage to the plaintiff and interference with its business. The mayor and council are without authority to remove the plaintiff's tracks as proposed. Injunction was prayed.

The defendant answered, in brief, as follows: It admits the adoption of the resolution referred to in the petition, but denies that the proposed shifting of the tracks in Tenth avenue is to be done for the accommodation and convenience of the Seaboard Air-Line Railway in the construction of its new freight depot, and says that it is to be done for the public interest. It admits the making of a contract with the plaintiff in regard to its main line, but denies that it agreed for the plaintiff to maintain and operate any side-track along Tenth avenue. It denies the anticipated damage which the plaintiff alleges would result to it from this shifting of the track. After hearing evidence and argument the presiding judge refused the injunction prayed. His order contained these words: "This order granted after a personal inspection and observation of the tracks and surroundings of the street crossing and tracks involved." Plaintiff excepted.

*Rosser & Brandon, J. L. Sweat,* and *Crum & Jones,* for plaintiff.

*E. F. Strozier, Whipple & McKenzie,* and *E. A. Hawkins,* for defendant.

LUMPKIN, J. (After stating the facts.) 1. It is unnecessary to enter into a discussion of the general principles involved in this case, further than to refer to the case of *Macon R. Co.* v. *Macon,* 112 *Ga.* 782. This was not an effort to condemn the tracks of the

plaintiff as a nuisance, or to have them removed altogether as such, but to require them to be shifted a few feet from the position in which they had been laid down originally along the street. It was insisted that the City of Cordele was without power to make such a requirement. By its charter, however, it was provided that: "The mayor and city council shall have power and authority to open, lay out, widen, straighten, or otherwise change the streets and alleys of said city, and shall have power to lay off, vacate, close up, open, alter, curb, pave, drain, and repair the roads, streets, bridges, side-walks, alleys, crosswalks, drains, and gutters for the use of the public or any citizen of the city." (Acts 1888, p. 215.) It also contained a general welfare clause authorizing the mayor and city council "to pass all such ordinances and regulations for the government of said city, for the suppression of disorderly conduct, the protection of life and property, the maintenance of the public peace and the protection of the public health, which are not repugnant to the constitution and laws of this State or of the United States, as they may see proper to do, and to prescribe and enforce penalties for the violation of the same." These broad powers are sufficient to come within the ruling in the case of the *Macon Street Railroad Company,* above cited. It is not essential to decide at present whether or not the city could remove the tracks and charge the expense to the railroad company, or, if so, in what manner they could collect the charge.

The presiding judge had before him issues as to whether the municipal authorities were proceeding to act unreasonably and arbitrarily, or whether the proposed change was really necessary for the convenience and welfare of the public, or was required for the benefit, not of the public, but of the other corporation, the Seaboard Air-Line Railroad Company; also as to the effect which such change would have upon the plaintiff's business and property. He stated in his order refusing the injunction, as an integral part thereof, that he granted it after an inspection and observation of the tracks and surroundings. Counsel for plaintiff insisted in their briefs that this was error. What the judge saw we have no means of knowing, nor how far this affected him in rendering the judgment. It does not appear that this was done with the consent of the parties or their counsel. The plaintiff introduced more evidence than the defendant, but that introduced by the latter, plus the judge's per-

sonal observation, appears to have had the greater weight. We do not mean to say that the mere fact that the judge may have seen the premises involved before him in litigation, or may have known them, will either disqualify him or be a reason for reversing his judgment. But where a personal inspection is made a part of the trial and expressly enters into the judgment rendered, we think this is error unless authorized by consent of parties. *Harrison .v. Cotton States Life Insurance Co., 78 Ga. 716; Overstreet v. Sylvania Water Co., 124 Ga. 235.* It is true that there is no specific assignment of error based upon this statement in the judgment; but as the judge has expressly stated, in effect, that he was, in part at least, influenced by his own personal observation, it is difficult for this court to determine whether he erred or not, considering what he had before him. This would not, however, necessitate a ruling that an injunction should be granted; but, under the facts stated, the judgment refusing an injunction is reversed and direction given that the case be reheard under the law and upon the evidence which may be produced.

*Judgment reversed, with direction. All the Justices concur.*