## ATLANTIC & BIRMINGHAM RAILWAY COMPANY *v.*
## MAYOR AND COUNCIL OF CORDELE.

1. A judge of the superior court is not disqualified to preside for the second time at an interlocutory hearing for injunction to prevent the change of location of a railroad track in a city's street because his judgment rendered on the first hearing recited that his conclusion had been reached in part from an inspection of the tracks in the street, and had been vacated by this court for that reason.

2. Many of the conclusions of the witnesses, based on relevant facts stated by them (to which objection was made), related to a subject-matter which was provable by opinion evidence. While some of the conclusions may not have been strictly within the rule of opinion evidence, they were of such a character that the objecting litigant could not have been harmed by the evidence.

3. A regulation by a city, requiring a commercial steam-railroad company to change the location of its tracks in a street, is a legitimate exercise of municipal police power, when such regulation is reasonable and promotive of the general welfare and convenience of the city and its inhabitants.

4. The evidence before the judge authorized a finding that the ordinance, which required the railroad company to shift the location of its tracks within a certain street, was reasonable, and conducive to the welfare and safety of the public.

5. Such a reasonable regulation by a municipality is the exercise of a legislative function; and notice of the proposed enactment of any ordinance prescribing such reasonable regulation to the parties to be affected by it, previously to its adoption, is a privilege, and not a right.

6. The city may enforce a reasonable regulation which requires a railroad company to move its tracks a few feet in a street, by itself making the proposed change at the company's expense, after notice to the railroad company, and failure by it within a reasonable time to perform the work.

Argued January 7,—Decided May .15, 1907.

Petition for injunction. Before Judge Littlejohn. Crisp superior court. November 22, 1906.

*Rosser & Brandon, Crum & Jones,* and *Ben. J. Conyers,* for plaintiff.

*E. A. Hawkins, Whipple & McKenzie,* and *O. T. Gower,* for defendant.

EVANS, J. 1. When this case was before us on a former occasion (125 *Ga.* 373) the judgment refusing an injunction was reversed because it appeared therefrom that the judge's personal knowledge of some of the facts entered into his decision. On the second interlocutory hearing for injunction, the plaintiff moved the disqual-

ification of the judge on this account; and the motion was overruled. In the order overruling the motion to disqualify him, the judge stated that his personal knowledge of any fact which might be involved in the case was limited to an observation of the railroad tracks in the city's street, which appeared by drawings or maps attached to the original petition and answer. We do not think the judge was disqualified, under these circumstances, to preside at the second hearing for injunction. A juror is not rendered incompetent solely because he may have personal knowledge of some of the facts involved in the case. He may even be called as a witness from the jury-box to testify about such relevant facts as may be within his knowledge. *Chattanooga R. Co. v. Owen,* 90 *Ga.* 265 (9). For a stronger reason a judge should not be disqualified from presiding in a cause because he may personally know some fact which may be under inquiry in the case. However, neither judge nor juror can use such personal knowledge as a factor in solving the juridical problem. The previous ruling of Judge Littlejohn did not make it improper for him to preside at the second hearing. In motions for new trial judges must necessarily pass upon the effect of evidence and express their opinion on its sufficiency, by denying or granting a new trial. Should a new trial be ordered, it would be absurd to say that the judge could not preside in the second trial. No such cause of disqualification is recognized by the law. See the Civil Code, §4045; *Tibbs* v. *Atlanta,* 125 *Ga.* 18.

2. The plaintiff contested the right of the City of Cordele to compel the shifting of its tracks on Tenth avenue, between Sixth and Seventh streets, upon the grounds that the proposed change could not be made without greatly injuring and damaging the abutting property on the south side of the avenue, and that the construction of its own tracks would not permit the change because of the curvatures therein, and because the proposed change was for the accommodation of the Seaboard Air-Line Railway in the construction of its new freight depot on the north side of Tenth avenue, and not for the benefit of the municipality. Several affidavits were submitted in support of these contentions, and the City of Cordele offered several affidavits of civil engineers and of citizens, to disprove the plaintiff's contentions. The general tenor of the affidavits offered by the city was to the effect that the proposed

change, as shown in a blue print accompanying the affidavits, was perfectly feasible, and would not increase the cost of operation and maintenance of the track, nor interfere or hinder the handling of business from plaintiff's warehouse, but would provide a reasonably satisfactory driveway adjoining the freight depot of the Seaboard Air-Line Railway, by widening the same, and thereby reducing the hazards to teams employed in loading from and unloading at its freight depot. These conclusions from the facts stated by the witnesses were objected to on the ground that they were not the subject-matter of opinion evidence.

As was said by the present Chief Justice, in *Mayor of Milledgeville* v. *Wood,* 114 *Ga.* 372, "experts on questions relating to a particular art or science, or which come under the observation and experience of persons engaged in a particular profession, trade, or occupation, who, from their superior facilities and experience, are better qualified than ordinary jurors to form correct conclusions thereon, are permitted to give their opinions to the jury, based upon given facts which they have testified to themselves, have heard others testify to in the case, or which have been hypothetically stated to them." Railroad construction, where not only the safety of the public, but also the convenience and economy of the operation of cars, and the transportation of freight and passengers are to be considered, requires the attention of men specially prepared both by study and experience. It is not to be expected that a judge or juror will be able to say that the change of curvature in a given instance would have the effect to endanger the public or to increase the operating expenses of the railroad company. The feasibility of the proposed change, as illustrated by the drawings to which various witnesses referred, was peculiarly the subject-matter of opinion evidence. Perhaps some of the conclusions stated by the witnesses may not properly have come within the strict letter of the rule as to the admissibility of opinion evidence, but as the main question for solution before the chancellor was as to whether the municipal action was unreasonable and arbitrary because the proposed change was not necessary for the convenience and welfare of the public, and could not be accomplished except by serious impairment of the railroad company's rights in Tenth avenue, and its solution being largely dependent upon the effect of the shifting of the tracks on the plaintiff's railroad as required by the mu-

nicipality, and opinion evidence being competent to establish this, we will not set aside the whole investigation because conclusions relating to the minor details may not have been strictly admissible.

· The court allowed the affidavits of several engineers, based upon maps shown by other testimony to be correct, to the effect that the proposed change in the location of plaintiff's tracks in Tenth street was feasible, and would result in no impairment of the plaintiff's right to use the street. These affidavits were objected to on the ground that as the witnesses had no personal knowledge of the actual situation, their testimony, based upon the engineer's drawings proved to be correct, was incompetent. We think this objection was without merit. The civil engineers were experts in the business of railroad construction. They were competent to give their opinion hypothetically without actual knowledge of the situation.

3-4. When this case was here before (125 *Ga.* 373) it was adjudicated that the charter power of the City of Cordele was broad enough to authorize the resolution of the mayor and city council requiring the plaintiff to remove its main line of railroad and its side tracks on Tenth avenue further towards the south side thereof. It was also adjudicated that this broad charter power was sufficient to bring the case within the ruling of *Macon Street R. Co.* v. *Macon,* 112 *Ga.* 782. In the exhaustive opinion in the latter case, it was demonstrated that the municipal authorities of a city, in the exercise of the police power given by the charter, could make any regulation having for its purpose the adjustment of the tracks of a railroad company in its streets to the convenience and welfare of the city, which did not amount to a deprivation or impairment of the franchise of the railroad, and which was neither unreasonable nor arbitrary. It was there held that a municipality did not surrender its governmental control over its streets by permitting a railroad company to occupy a part of the same, but that the railroad company, in accepting the permission, took it subject to the governmental control of the streets by the city. We are asked to review this case, but inasmuch as the principles therein enunciated were, by reference, incorporated in the decision formerly rendered in this case, we doubt our power to review or reverse the same. *Gray* v. *Conyers,* 70 *Ga.* 349; *Henderson* v. *Central Railroad,* 73 *Ga.* 718 (3); *Saulsbury* v. *Iverson,* 73 *Ga.* 733. But assuming that it is

within our power to modify or overrule this case on review, we de-cline to do so, because the principles there announced are too well supported both by reason and authority.

We have carefully examined the evidence, and think it was sufficient to authorize the conclusion that the ordinance which required the plaintiff to shift the location of its tracks in Tenth street by moving the same a few feet southward along the street was neither unreasonable nor arbitrary, but was a proper exercise of the police power of the city in the control of its streets.

5. At the hearing which is now under review, an amendment was allowed to the original petition, wherein it was set out that the ordinance of June 24, 1905, was passed by the Mayor and Council of Cordele without any notice to the plaintiff, and without giving it an opportunity to be heard with reference thereto. There is a vital distinction between a city's power to require a railroad company to adjust its tracks to the conformation of the street, or shift the location of the track in the street so as to insure the public convenience, welfare, and safety, where the railroad's franchise in the street is neither destroyed nor seriously impaired, and the power to enforce a requirement which amounts to a deprivation or serious impairment of the railroad's franchise to use the street. In the latter instance the city can only proceed as in the case of a nuisance, and the question is judicial, or at least quasi judicial in its nature. *W. & A. R. Co.* v. *Atlanta*, 113 *Ga.* 537. On the other hand, where the regulation is a reasonable and bona fide exercise of the city's governmental control of its streets for the welfare, convenience, and safety of its citizens, and the change of location of the railroad's tracks is but the incident of this governmental duty to keep the streets in repair and regulate the use thereof for the convenience and safety of the general public, it is a legitimate exercise of municipal legislative power. *Macon Street R. Co.* v. *Macon*, supra. To convert every exercise of the police power into a judicial investigation would paralyze municipal action, and would hinder the discharge of the very functions of local government intended and designed by municipal incorporation. The prescribing of reasonable regulations for the use of its streets within charter powers is a legislative function. That being so, the right to be heard by the legislative branch of the city government as to the propriety of the proposed regulation is a privilege, and not a right.

The city can only prescribe reasonable regulations; and if the ordinance is beyond charter power, or is unreasonable, it is void, and the railroad company, in a proper case, may enjoin the enforcement of a void ordinance. *Jacobs* v. *Atlanta, 125 Ga. 523.*

6. It is further insisted that even if it is a reasonable and proper exercise of police power to require the plaintiff's tracks to be moved as is set out in the ordinance of June 24, 1905, it can not be enforced in the manner the city proposes. The resolution of August 2, 1905, provided that if the plaintiff railroad company did not remove its tracks as provided in the resolution of June 24, 1905, within five days from the date of the ordinance, the city would have the work done at the expense of the railroad company. It was further resolved that the railroad company be served at once with a copy of the resolution. No point is made that five days is an unreasonable time within which the proposed change of tracks may be accomplished, but the railroad squarely challenges the right of the City of Cordele to require it to change the tracks at all. In the case of *Cleveland* v. *Augusta, 102 Ga. 233,* it was held that a city may change the grade of its streets and require a steam railroad to adjust its track to the new grade at the railroad's expense. Having the right to require the railroad to do the work, what sound objection can be raised to the method of making the change, which the city intended to pursue in this instance? Where it devolves upon a railroad company to keep its crossing in repair, and it refuses to perform that duty, the officers of the city who are required to see that its streets are kept safe for travel may repair it and recover the expense thereof from the railroad company. Elliott on Roads and Streets, §785. It has been held that a city may require a street-railroad company to change its grade to conform to the street at the railroad's expense, and, after notice, may, upon the railroad's failure to do the work, have the same done at the railroad's expense. City of Columbus *v.* Columbus Street R. Co., 45 Ohio St. 98. There can be no real difference between a street-railway and a commercial railroad with regard to the city's power to make repairs at the expense of the company, and to collect the reasonable cost thereof. We can not assume that the city will do the work in an unskilful manner, so as to expose the railroad company to possible injury. In such a case the railroad company should be given reasonable opportunity within which to comply with the

city's requirements; and if it omits to avail itself of the opportunity to repair its track or to change its location, as the case may be, it would have no just cause of complaint that the city performed this service for it; and the railroad company would be bound to reimburse the city for the reasonable cost of doing the work.

*Judgment affirmed.　All the Justices concur.*