## THOMPSON *v.* THE STATE.

1. Where one convicted of murder has made a motion for a new trial, and the same is set for hearing in a county other than that in which the trial was had, and the defendant offers and the court allows an amendment to the motion, setting up that certain witnesses residing in the county in which the case was tried know facts which are material to his case and refuse to testify thereto voluntarily by affidavit or otherwise, and that such testimony is newly discovered, all of which is supported by proper affidavits, it is error for the court to refuse to grant the motion of the defendant, contained in such amendment, that the court continue the hearing and afford him its aid in procuring the desired testimony. Civil Code §§ 5918 and 5919 do not apply to the case above outlined.

2. It is error for the trial judge before whom a motion for a new trial is pending in a criminal case to receive and consider an affidavit of a witness whose testimony is material and favorable to the State, after the hearing of the motion for a new trial is closed and before his judgment on the motion is made up, no previous notice of such affidavit having been given the defendant or his counsel.

JUNE 12, 1912.

Indictment for murder. Before Judge Rawlings. Jefferson superior court. March 22, 1912.

*A. R. Wright,* for plaintiff in error.

*T. S. Felder,* attorney-general, *Alfred Herrington,* solicitor-general, *Hines & Jordan,* and *R. N. Hardeman,* contra.

Will Thompson was tried and convicted of murder, without recommendation. The record discloses, that from the date of his arrest the defendant was confined in jail, in a county different from the one in which the homicide occurred, until the day before his trial; that he was, from poverty, unable to employ counsel, and counsel were appointed to defend him by the court at the trial, who have since not represented him; and that he has since secured other counsel. After the verdict, the counsel appointed by the court made a formal motion for a new trial, which seems not to have been pressed by them. The motion for a new trial was set for hearing in a county different from the one in which the trial took place. At the time and place set for the hearing the motion was continued to still another county, and on another date. At the latter time and place, the present counsel for the plaintiff in error offered an amendment to the original motion for new trial, which was allowed, and also moved the court for a continuance of the motion for a new trial; which amended motion was in part as

follows: "Because, since the trial and rendition of the verdict in said case, certain material evidence, not merely cumulative or impeaching in its character, but relating to and proving new and material facts, has been discovered by the movant, said evidence being in substance as follows, to wit: Haman Green, who is a resident of .Avera, will testify on another trial as follows: that he saw the latter part of the tragedy in which Mr. Claude Humphrey was shot by the movant, and saw what transpired immediately at and before the time of the shooting, and the facts and circumstances as he knows them are, that the deceased and his brother, Mr. Carlos Humphrey, were together and were following movant at very close range; his attention was first attracted by some statement made by deceased to movant (the exact words of which he did not catch), to which statement movant replied, 'That's all right, white folks', and continued walking away from deceased and his brother; deceased then remarked to movant, 'You don't believe I'll do it, do you?' to which movant again replied, 'That's all right, white folks,' and kept on walking away from the deceased and his brother, who were still following movant; deceased then turned to his brother and, handing something to him (either a bundle or little satchel), said, 'Here, Carlos, hold this; I'll show the damned son of a bitch whether I'll do or not,' and immediately rushed on movant; and as movant partially turned on his approach, deceased struck movant in the face and immediately threw his right hand to his hip-pocket in an effort, apparently, to draw his pistol, the while clutching and holding the movant with his other hand; and while the deceased was thus in the act of drawing his weapon movant got his pistol out first and fired upon the deceased; movant had no weapon and made no attempt or effort to draw one until after deceased had struck him and was apparently actually endeavoring to draw his pistol from his hip-pocket; after the shooting witness was sure that the deceased had killed movant and was surprised to learn otherwise; witness was only ten or fifteen feet from the parties at the time of the shooting, and was in a position to see and did see just what happened between them.—Antony Kelly, who is a resident of Avera, in said county of Jefferson, will testify on another trial as follows: That immediately after the shooting he saw a fresh wound on movant's neck, made apparently by a knife cut, and that the wound was bleeding.—Dr. J. C. Raley,

who is a resident and practicing physician of Avera, in said county of Jefferson, will testify on another trial that movant was forced to kill the deceased in order to save his own life, and will give the particulars of the killing as he saw them. This witness has refused and still refuses to give movant or his counsel an affidavit setting forth his knowledge of the particular facts and circumstances, or to voluntarily tell them the particulars of the killing as he saw and knows them, but he has stated enough to movant's counsel and to others, as shown by the affidavits of J. W. Neal and D. W. Barfield hereto attached, to prove clearly and positively that he saw the shooting and knows the truth of the transaction, and that his testimony will be most favorable to movant and will .exonerate him from criminal blame. Movant attaches hereto and makes a part of this ground of his amended motion for new trial the affidavits, respectively, of M. M. Williams (and the supporting affidavit of W. H. Walden, M. M. Williford, Tom May, and J. H. Wilcher), J. W. Neal, D. W. Barfield, G. F. Dixon, and 'M. M. Williams jointly, J. R. Phillips, J. C. Newsome, and A. R. Wright, which affidavits show the truth of the existence of the material testimony set forth in this ground of the amended motion, and that the same was unknowr to movant and his counsel before the trial. Movant also attaches his own affidavit as a part of this ground of the motion. Movant asserts and shows to the court that he has diligently sought to obtain from the above-named witnesses, Haman Green, Antony Kelly, and Dr. J. C. Raley, affidavits setting forth their testimony as above narrated, but each firmly and positively refuses to voluntarily give the same, stating that they will not testify until required to do so by the court. Movant therefore prays that the court take such action and grant such order as will require the witnesses above named to appear and give their testimony to be used for and on behalf of movant upon this motion for a new trial and upon this ground thereof, and to that end that a time and place be fixed to and at which said witnesses may be subpœnaed to appear and give their testimony in accordance with the provisions of law, and that this motion be continued until such time. In addition to the foregoing it can be proved, on another trial, as shown by the attached affidavit of J. H. Wilcher, that Carlos Humphrey, brother of the deceased, was a participant with the deceased in the difficulty and with the deceased was mak-

ing a deadly assault with a deadly weapon upon movant at the time of the shooting, and that the said Carlos Humphrey has since the trial admitted and stated 'that the reason he did not kill William Thompson was because it was dark, and he could not see where he was cutting him, and his knife blade was too short to reach through his clothes,' and movant has reason to believe that the said Carlos Humphrey will so testify upon another trial, as the facts above stated are the truth and movant has the right to rely upon the witness admitting and testifying the truth. The said Carlos Humphrey was not present at the trial of movant and was inaccessible at the time, he being too sick to attend the court, as is shown by the record in said case." The required affidavits accompanied the motion in support of it. The motion to continue was overruled by the court. Between the date of the motion to continue and the judgment overruling the motion for a new trial, the court received on the part of the State, without notice to the defendant, and considered the following affidavit of Dr. J. C. Raley: "Personally appeared J. C. Raley, a practicing physician at Avera, Ga., who makes this affidavit for the purpose of being used in the above and motion, and on oath says that he has never said. to anyone that the defendant Will Thompson had to kill the deceased; nor has he ever said that the deceased made the defendant kill him; nor has deponent ever said that the said Will Thompson was justified in killing the deceased; and this deponent says that he knows no facts that are material in said case." The court overruled the motion for a new trial, and the defendant excepted.

HILL, J. (After stating the foregoing facts.)

1. We think the court erred, under the facts of this case, in not granting a continuance of the hearing of the motion for a new trial, as asked by the plaintiff in error. The record shows that the defendant had been confined in jail in a different county from that in which the homicide occurred, from the date of his arrest until the day previous to the trial, and that from his poverty the defendant was unable to employ counsel to represent him and prepare for his trial. The court, on the day before the trial, appointed counsel to defend the plaintiff in error; and after representing him at the trial and making a formal motion for a new trial, the attorneys so appointed, it seems, no longer represented him. The newly discovered evidence appears not to have been known to the

original or present counsel, or to the plaintiff in error, nor under the facts of this case do we well see how it could have been. When the present counsel for the plaintiff in error came into the case, he discovered the evidence and asked a continuance of the motion in order to secure and present it for the consideration of the court. The witnesses refused voluntarily to testify for the plaintiff in error, and counsel asked a continuance of the motion in order that the process of the court could be invoked to compel the witnesses to give evidence. The testimony, if true, is material and vital to the defense. By what method could the defendant get this testimony for use on the hearing? In cases heard on affidavits, including motions for a new trial, the Civil Code, § 5918, provides a method of forcing testimony from an unwilling witness who is a resident of the county in which the *suit is pending*. Application is to be made to the clerk of the superior court of that county and subpœna obtained, calling upon the witness to appear at the hearing, when the trial judge can require the witness to answer written questions propounded to him, or can appoint a commissioner for that purpose, or, the witness consenting, his affidavit may then be prepared and sworn to. § 5919 provides that in cases where the witness resides out of the county (that is, construing the two sections together, out of the county in which the *suit is pending*), subpœna may be obtained from the clerk of the superior court of the county of the residence of the witness, and the witness thus be required to appear before some officer of that county authorized to administer oaths, and answer written questions prepared for him, the answers to be reduced to writing, sworn to before the officer and by the latter forwarded to the clerk of the court in which the *case is pending,* as in case of interrogatories. It seems that the legislature by these two sections was providing for only two contingencies: by section 5918, to obtain the testimony of an unwilling witness at a hearing on written testimony in the county in which the case or suit was pending when the witness resided in that county; and by 5919, when the witness resided out of the county in which suit or case was pending. A criminal case is pending in the county in which the venue for trial is laid. If the motion for a new trial is granted, wherever passed upon, it is granted for a new trial in the county of the venue. The effect of an order for the hearing of a motion for a new trial subsequently

to the regular adjournment of the term of court at which the trial
is had is to keep that term of the court open with respect to that
particular case until the hearing and determination of the motion
at the time it is first set, or pursuant to further specific orders of
continuance passed on the day set for the hearing. *Herz* v. *Frank,*
104 *Ga.* 638 (30 S. E. 797); *Atlanta Ry. Co.* v. *Strickland,* 114
*Ga.* 998 (41 S. E. 501). The present case was pending in Jeffer-
son county. A hearing of the motion was set in Washington
county. The witnesses whose newly discovered testimony the de-
fendant sought to obtain by compulsion resided in Jefferson county,
where the case was pending. If the defendant had any right under
these sections, therefore, it was to proceed under section 5918; but
this could not avail him, because it provides only for an attend-
ance of the witnesses at a hearing in that county, and the hearing
was set elsewhere. He had no method, under the general law, of
compelling witnesses to attend a hearing in a county other than
that of their residence. If Penal Code §§ 1143 and 1147 are appli-
cable to hearings of this kind held outside of the county of the
residence of a witness, they do not give a defendant an absolute
right to compel the attendance of a witness, but only upon pro-
curing subpœna signed by the clerk and solicitor-general. If there
be any general inherent power in the court to compel a witness,
under the circumstances of this case, to testify for the defendant,
its exercise is discretionary with the court, and the defendant by
the motion itself was seeking the aid of the court in procuring
evidence which he had no absolute legal method of securing. If
the motion for a continuance had been granted and a hearing set
in Jefferson county, the defendant could then have proceeded
under section 5918 to make his showing as to what the witnesses
would testify with respect to the circumstances attending the
homicide, of which, according to the affidavits filed with the motion,
they were eye-witnesses. We think a sufficient showing was made
with respect to the diligence of the defendant and his counsel in
discovering the alleged testimony and of the nature thereof; and
upon the showing made by the defendant that he could not secure
voluntary evidence from the witnesses, it was the duty of the court
to continue the hearing and set it at such time and place as would
give the defendant the opportunity of forcing the witnesses to
testify concerning the facts material to his case, of which they were
alleged to have knowledge.

2.   Error is assigned in that the court, between the time of the hearing of the motion for a new trial and the rendition of the judgment overruling it, permitted the State's counsel to file with and read to the judge the affidavit of a witness for the State which was antagonistic to the defendant's case, that this was done without notice to or knowledge of the defendant or his counsel, and that this affidavit was considered by the judge in forming his judgment overruling the motion.   We find no criminal case in which this precise question was involved, but the rulings in a number of civil cases, by analogy, would seem to apply.   And if the rule laid down in civil cases is to reverse the judgment in such cases, how much more strongly ought it to apply to a criminal case where personal liberty and life are involved.   In the case of *Atlantic &c. Ry. Co.* v. *Cordele, 125 Ga. 373* (54 S. E. 155), it was held: "The presiding judge who heard the issues involved in the application for injunction, including the questions of whether the required removal was in fact for the convenience and welfare of the public or only for the benefit of another corporation, whether there was a necessity for the proposed change, whether the proposed act would be unreasonable or abitrary, and what would be the effect, if any, upon the operation and property of the plaintiff, having stated, in his order refusing to grant an injunction, that he heard evidence and argument, and also that 'This order [is] granted after a personal inspection and observation of the tracks and surroundings of the street crossing and tracks involved,' and it thus appearing that the judge's personal inspection and observation were made an integral part of his judgment, and it not appearing that this was done with the consent of counsel or parties, the judgment will be reversed, with direction that the case be heard upon the evidence which may be introduced, unless inspection by the judge as part of the proceedings be had with the consent of both parties." And see *Horton* v. *Fulton, 130 Ga. 466* (4), 467 (60 S. E. 1059) ; *Sylvania Water Co.* v. *Overstreet, 124 Ga. 235* (52 S. E. 164) ; *City Bank of Macon* v. *Kent, 57 Ga. 286* (24).

We hold, in view of the peculiar facts of this case, that the judgment of the court below overruling the motion for a new trial should be vacated and set aside, and the motion for a new trial be set for hearing at such time and place as will afford the plaintiff in error an opportunity to examine his witnesses according to the

18

provisions of the law as contained in the Civil Code, § 5918 et seq., or in such other manner as may be provided by law, and that the trial judge will rehear the motion and the testimony of the witnesses, and pass upon the motion for a new trial in the light of the showing made as to the newly discovered evidence, if produced at the next hearing.

*Judgment reversed, with direction.   All the Justices concur.*