BOARD OF MEDICAL EXAMINERS *v.* STEWARD

[No. 64, October Term, 1953.]

*Motion to dismiss appeal, filed August 8, 1953; motion granted, appeal dismissed, January 14, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*J. Edgar Harvey, Deputy Attorney General,* with whom was *Edward D. E. Rollins, Attorney General,* on the brief, for appellant.

*J. Cookman Boyd, Jr.,* and *Lansdale G. Sasscer,* with whom were *Henry M. Decker, Jr.,* and *Hal C. B. Clagett* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

One of the Boards of Medical Examiners for the State of Maryland brought this appeal from an order of the Circuit Court for Prince George's County, which reversed the Board's revocation of the license of Dr. Napoleon B. Steward to practice medicine and surgery in the State of Maryland.

By direction of the Medical Practice Act, Code 1951, art. 43, secs. 117-147, there are in Maryland two Boards of Medical Examiners which have authority to issue licenses to practice medicine and surgery in this State. The members of one Board are appointed by the Medical and Chirurgical Faculty of Maryland, and the members of the other by the Maryland State Homeopathic Medical Society. Each Board consists of eight members, each of whom is appointed for a term of four years.

Section 144 of the Act provides that the Board, by a vote of five members, may revoke any license to practice medicine and surgery for any of the following causes: (1) the use of fraud or deception in passing the examination provided by the Act; (2) habitual drunkenness, (3) criminal abortion, (4) conviction of crime

involving moral turpitude, and (5) unprofessional or dishonorable conduct. Before proceeding to revoke a license, the person against whom complaint is made shall be furnished a copy of the complaint and charges made against him, and shall be given an opportunity for a hearing before the Board, in person or by attorney, and at such hearing testimony may be offered for and against the accused. The action of the Board shall be reduced to writing, stating also the reasons for such action, and a copy thereof shall be delivered or mailed to the person against whom complaint is made.

Section 144 makes this provision for an appeal from the Board to the Circuit Court: "* * * within sixty days after said notice of revocation of license shall have been delivered or mailed to any person said party shall have the right of appeal to the circuit court of the city or county wherein he may reside, the judge or judges of which said court shall fully hear and determine all matters connected with the action of said board from which appeal is taken, and the decision of said court shall be final; * * *"

The Board of Medical Examiners which represents the Medical and Chirurgical Faculty instituted the complaint to revoke Dr. Steward's license on June 5, 1951. The Board charged him with "conviction of crime involving moral turpitude and with unprofessional and dishonorable conduct in that he was convicted of income tax evasion."

The complaint was set for hearing on November 1, 1951, but the hearing was postponed until November 16.

The following eight physicians were members of the Board on November 1: Dr. Erasmus H. Kloman, president, Dr. Lewis P. Gundry, secretary, Dr. Henry T. Collenberg, Dr. Edward P. Thomas, Dr. John E. Legge, Dr. John H. Hornbaker, Dr. E. Paul Knotts and Dr. Edward Hanrahan. On that day Dr. Hanrahan, who is now deceased, submitted a letter of resignation. Having contracted tuberculosis, he was planning to leave for Saranac Lake. At the suggestion of the president of the

Board, his letter of resignation was modified to request only a leave of absence for six months. The Board granted him leave of absence and appointed Dr. Samuel McLanahan to serve as a substitute for the remainder of his term.

On November 16 Dr. Steward appeared before the Board with his attorney and witnesses. On January 17, 1952, the Board, with six members present—Dr. Kloman, Dr. Gundry, Dr. Collenberg, Dr. Thomas, Dr. Legge and Dr. McLanahan—determined that the conviction of income tax evasion constituted a crime involving moral turpitude and also unprofessional and dishonorable conduct, and ordered that the license be revoked.

Dr. Steward appealed from that order to the Circuit Court for the County in which he resided. He contended that the Board was not validly constituted, as it had no authority to appoint a "substitute" during Dr. Hanrahan's absence. He relied on Section 118, which provides as follows: "In case of a vacancy occurring in either of said boards, the board in which such vacancy shall occur shall fill the same until the next annual meeting of the Medical and Chirurgical Faculty, or the Maryland State Homeopathic Medical Society, according as the board in question may be the representative of one or other of said societies, when said society shall elect an examiner to serve for the remainder of such unexpired term."

The Attorney General, representing the Board of Medical Examiners, argued on the contrary that, since a license can be revoked by the votes of five members of the Board, and since six votes were cast in favor of revoking the license, the law was gratified without counting Dr. McLanahan's vote.

The Court said in its opinion that Dr. Steward is entitled to a fair and impartial hearing before a legally constituted Board, and that the Board was not legally constituted on November 16, 1951, when it heard the complaint. The Court took the view that the Board had no power to grant a leave of absence and allow

Dr. McLanahan to sit as a substitute member. The Court asserted that the Board is an administrative agency created by the Legislature and possesses only those powers that are conferred upon it by statute, and that the statute provides that when there is a vacancy on the Board, the Board can fill it only by appointing someone for the unexpired term until the next annual meeting of the Medical and Chirurgical Faculty. The Court ruled that Dr. Hanrahan had not resigned from the Board, and therefore Dr. McLanahan was not a duly appointed member. Accordingly the Court remanded the case to the Board for another hearing, and refrained from expressing any opinion on the basic issue whether the conviction of income tax evasion constituted a crime involving moral turpitude and unprofessional and dishonorable conduct.

The Board has objected primarily to the concluding part of the Court's opinion, which reads as follows:

"The Board on November 1, 1951, was faced with a charge initiated by itself. On that date by appointing an unauthorized substitute for Dr. Hanrahan it disqualified itself from either legally expressing any opinion or taking any action affecting the doctor's license to practice that might result from its hearing on November 16, 1951. Since the order must be reversed the case will be remanded to the Board in order that a Board of Medical Examiners validly constituted may hear and determine the charge instituted on September 25, 1951.

"It seems appropriate to point out both to the Board and Dr. Steward, that any Board of Medical Examiners which might hear and determine this charge could not be composed of any of the five regular members who sat with Dr. McLanahan at the original hearing. Dr. Steward is entitled to a fair and impartial hearing before a regularly constituted board. He is entitled to have his case acted upon only

through due process of law and can not be denied the equal protection of the law under the state and federal constitutions. This means that the members of any board which would determine his case must not be legally prejudiced against him. Again, while it is not intimated that Drs. Kloman, Gundry, Legge, Collenberg, and Thomas, if still members of the Board, would intentionally be unfair, they are in a legal sense held to be prejudiced in this case in that they have already committed themselves publicly to the interpretation disclosed in their order of revocation of January 17, 1952."

Under the opinion the Court entered the following order: "For the reasons herein contained the order of January 17, 1952, is reversed and the case remanded to the Board of Medical Examiners for further proceedings not inconsistent with this opinion."

It is necessary to dismiss the Board's appeal from that order, as the statute gives no right of appeal from the Circuit Court to the Court of Appeals. It is a well settled rule that the Court of Appeals cannot entertain an appeal from any order or judgment of the Circuit Court sitting as an appellate tribunal under special statutory authority where no right of appeal is expressly given, except in cases where the Court exceeded its jurisdiction. *Travers v. Dean,* 98 Md. 72, 78, 56 A. 388; *Cumberland Valley R. Co. v. Martin,* 100 Md. 165, 59 A. 714; *Hendrick v. State,* 115 Md. 552, 557, 81 A. 18; *Stephens v. Crisfield,* 122 Md. 190, 193, 89 A. 429; *Board of County Com'rs of Harford County v. Jay,* 122 Md. 324, 327, 89 A. 715; *Close v. Southern Maryland Agricultural Ass'n,* 134 Md. 629, 633, 108 A. 209.

As the Court stated in *Johnson v. Board of Zoning Appeals of Baltimore County,* 196 Md. 400, 412, 76 A. 2d 736, if there is no right of appeal from the Circuit Court to the Court of Appeals, and if the Circuit Court had the power to decide what it did decide, then its

decision, whether right or wrong in point of law or fact, cannot be reviewed, because the Court of Appeals has not been given the power to review such a judgment.

In the case before us it is undeniable that the Circuit Court had the power to invalidate the Board's order revoking Dr. Steward's license, since the Legislature has authorized the Circuit Court to fully hear and determine all matters connected with the action of the Board from which appeal is taken. The Board, however, has called attention to the serious situation which has arisen from the Court's concluding statement, whereby the members of the Board who heard the complaint in 1951 will not be qualified to hear the complaint again.

While we ordinarily do not give our views on any question raised on a dismissed appeal, we occasionally do so when it is of great public importance. *State v. Haas,* 188 Md. 63, 51 A. 2d 647; *State v. Harman,* 199 Md. 209, 214, 86 A. 2d 397. The point raised here is of considerable public importance. The Attorney General has pointed out that, if the statement of the Court is correct, the members of the Board will be faced with the choice of either resigning or taking the risk of being held in contempt of court. We, therefore, think that in this particular instance it is expedient to make an exception and express our opinion on the point in controversy, especially since the Court's statement was supererogatory, dealing with the qualifications of the Board at some future time.

We must reject the Court's statement that the members of the Board who heard the complaint against Dr. Steward in 1951 are disqualified to hear the complaint again. We fully appreciate that the administration of justice is based upon the fundamental principle that a judge shall not preside in any case unless he is disinterested and impartial. *Magruder v. Swann,* 25 Md. 173, 206. The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States guarantees to every person a fair hearing before a fair and impartial court. *Tumey v. State of Ohio,* 273 U. S.

510, 47 S. Ct. 437, 441, 71 L. Ed. 749, 50 A. L. R. 1243. This doctrine applies to an administrative agency exercising judicial or *quasi*-judicial functions. As pointed out by Chief Justice Hughes in *Morgan v. United States,* 304 U. S. 1, 58 S. Ct. 773, 775, 82 L. Ed. 1129, a fair and open hearing before an administrative agency is a safeguard "essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process."

The rule that every person is entitled to a fair and impartial hearing is specifically applicable in cases of revocation of licenses. However, disqualification will not be permitted to destroy the only tribunal with power in the premises. In *Brinkley v. Hassig,* 10 Cir., 83 F. 2d 351, 357, where the Kansas State Medical Board revoked the license of a physician to practice medicine and surgery in the State of Kansas, the Circuit Court of Appeals, speaking through Judge McDermott, stated:

"If the law provides for a substitution of personnel on a board or court, or if another tribunal exists to which resort may be had, a disqualified member may not act. But where no such provision is made, the law cannot be nullified or the doors to justice barred because of prejudice or disqualification of a member of a court or an administrative tribunal. * * * But the law does not require a member of a court or tribunal to resign his position because of an isolated case where he must act although interested."

In Connecticut the Legislature enacted a statute providing that "no judge of any court who shall have presided over any jury trial in a civil or criminal case, in which a new trial shall be granted, shall again preside at the trial of such cause." Conn. Public Acts 1899, ch. 128. Accordingly, in *State v. Hartley,* 75 Conn. 104, 52 A. 615, where a new trial was granted in a criminal case, the Supreme Court of Errors held that

the same judge should not have presided again, and the second trial was erroneous.

But in the absence of a constitutional or statutory provision to the contrary, the judge who presided at the trial of a case which is reversed on appeal and remanded for a new trial is not disqualified to retry the case. *Fry v. Bennett,* 28 N. Y. 324, 329; *Atlantic & Birmingham Ry. Co. v. Mayor and City Council of Cordele,* 128 Ga. 293, 57 S. E. 493; *May v. May,* 150 Ky. 522, 150 S. W. 685.

This general rule, which has always been accepted as applicable to judges in Maryland, is undoubtedly likewise applicable to members of administrative agencies, for usually the procedure of administrative agencies is not as formal and strict as that of the courts. For instance, an administrative agency is sometimes required to act as both prosecutor and judge, and it has never been held that such procedure denies constitutional right. On the contrary, many agencies, such as the Public Service Commission, the Interstate Commerce Commission, and the Federal Trade Commission, which combine these roles, have functioned for many years with the approval of the courts. Thus, in *Sutton v. Washington,* 4 Ga. App. 30, 60 S. E. 811, where the City Council had convicted a person of unlawfully keeping intoxicating liquors for sale, it was held that, after the case had been remanded for a second trial, the Council was not disqualified from hearing the case again.

We find no merit in the suggestion that the members of the Board of Medical Examiners already have some knowledge of the case and therefore have prejudged it. In *Sharkey v. Thurston,* 268 N. Y. 123, 196 N. E. 766, 768, the Court of Appeals of New York pointed out that an administrative agency oftentimes has personal knowledge of a case and to a certain extent prejudges it. There the Mayor of Lockport, New York, had determined that the Chief of Police should be removed from office, and if the Police Commissioners failed to remove him, he would remove the Police Commis-

584

sioners. Judge Lehman, speaking for the Court of Appeals, made the following comment in the case:

"Removal from office follows not as punishment for misconduct, to be determined by a judicial officer, but is an administrative act of the mayor who, like other administrators, is expected to act fairly, but whose acts will often be dictated by his personal knowledge. To that extent he must often act both as accuser and judge, and to that extent he must often prejudge the case before formal hearing. Even then the hearing is not futile. It requires formulation of the charge, and a public record of the defense presented. If the charge is substantial and the defense is not a conclusive proof of innocence, the statutory restrictions upon the power of removal are not overstepped."

As the concluding statement in the opinion of the Court below is not binding on the Board of Medical Examiners, it follows that the members of the Board need not fear that mere participation in a future hearing would constitute contempt of court.

*Appeal dismissed and case remanded, with costs.*