## SCHOENING v. CHICAGO, B. & Q. R. CO.

Circuit Court of Appeals, Eighth Circuit.
January 14, 1929.

No. 8134.

Philip E. Winter, of Casper, Wyo. (Winter & Winter, of Casper, Wyo., on the brief), for plaintiff in error.

C. D. Murane and A. E. Stirrett, both of Casper, Wyo. (J. C. James, of Chicago, Ill., and A. C. Campbell, of Cheyenne, Wyo., on the brief), for defendant in error.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge. In his effort to recover damages, plaintiff in error was cast at the conclusion of his evidence, and brings error. Hereinafter reference will be made to him as plaintiff, and to defendant in error as defendant.

Defendant's line of railway intersects plaintiff's land, situated in Fremont county, Wyoming. It traverses said land in almost a straight line from southeast to northwest. Plaintiff alleges that the construction of the roadbed was contrary to sound engineering judgment, and that as a result thereof his land has been eroded, and where not eroded it has been covered with sand, gravel, débris, and water from numerous and frequent overflows. Moreover, he charges that defendant has constructed and maintained a reservoir, and that therefrom, as well as from the inlet ditch, spillway, pipe line, and tanks, seepage has penetrated and saturated his soil, causing alkalization and its complete destruction. Plaintiff claimed damages in the sum of $35,000.

Among other defenses interposed by the defendant was the bar of a statute of limitations of the state of Wyoming; that plaintiff had not only granted a right of way to defendant for a valuable consideration over his land, but that he had also expressly consented to the construction of the roadbed and an embankment over and across his land; and that the damages sustained, if any, accrued to plaintiff during the time the lines of defendant's railroads were under federal control and were being operated as a war measure by the United States in its sovereign capacity. There was the further defense that on September 25, 1919, plaintiff for a valuable consideration executed a release for all damages that may have accrued to him.

The evidence was that on February 26, 1910, plaintiff, with his wife joining him, executed a deed to a right of way for said railway line over his land, and that in said deed it was expressly provided for a diversion of the waters of a stream known as Bad Water creek. Following the language granting the right of way, plaintiff made the further grant: "Together with the right to change the channel of Bad Water creek to run on the south side of the railroad as located over and across the north half (N. ½) of said section 18—38—90; also, the right to change the channel of said Bad Water creek to run on the south side of railroad as now located in the south half (S. ½) of section 12," etc.

In accordance with this written concession the defendant proceeded with its construction work, and in the year 1912 had built its line of railroad over plaintiff's land. It had so constructed its embankment as "to change the channel of said Bad Water creek to run on the south side of the railroad." This work was of a permanent character and was designed to continue without change.

Plaintiff testified that the erosion of his land began and was noticeable in the year 1913, and that the deposits which filled the channel and tended to produce overflow "gradually grew in each year, commencing in 1913." Although the erosion and deposits were observable immediately upon completion of the construction work in 1912, yet plaintiff testified that no actual damages accrued until 1916. There was no evidence as to the particular date in 1916 when actual damages began. By the year 1922 the total destruction of plaintiff's premises had been

wrought and the property was abandoned. The severest damage, according to the evidence, occurred in the year 1917.

The suit was filed on June 14, 1926. It was alleged in the petition that the change of the channel of Bad Water creek had so resulted that, "commencing in the year 1913, the channel of said Bad Water creek, so confined, shortened and obstructed, with greatly increased speed, fall and cutting force, causing erosion, cutting under and caving in of its banks and the washing down stream of the soil and débris, as aforesaid, began to fill up and overflow and widen out far beyond its original and natural average width of 10 feet at bottom and 20 feet at top, of its banks, and by the 15th day of June, 1916, said described conditions and results caused by defendant's said interference with the natural course of said Bad Water creek by its said construction of its railroad bed embankment and bridge, and by its said construction of said inlet ditch, reservoir, spillway, pipe line, and tanks reached and became apparent upon, in, about, and under all the said described homestead lands of plaintiff and all his improvements thereon, and began to damage the same and impair and diminish the value thereof."

There was evidence that plaintiff had a reservoir similar to that maintained by the defendant, and that the seepage therefrom drained into the same draw or swale as that penetrating from the reservoir of the defendant.

There are two assignments of error. The first one is a complaint against the action of the court in excluding from evidence a small plat, designated as plaintiff's Exhibit B, and the second a complaint against the action of the court in taking the case from the jury by directing a verdict for the defendant. These assignments will be noted and discussed.

■ 1. Exhibit B was described as follows: "The smaller plat * * * represents the loop where the stream was diverted to the opposite side of the road on Alkali creek." When offered in evidence, counsel for defendant made the following objection:

"We object to the introduction of the paper marked 'Exhibit B' for the reason that it pertains, from the testimony of the witness, to a section of Alkali creek which is not in controversy, and as to which plaintiff does not claim we made any changes in the channel, and the plaintiff is limited in his proof to the specific allegations of negligence in his petition."

An examination of the petition shows that counsel was right, and the court did not commit error in excluding this exhibit, for the reason that it was not material to the issues involved. Exhibit A, which was offered without objection, was a large plat, showing clearly and understandingly the whole premises involved in the litigation, with water courses, and the railroad right of way, so far as material, accurately marked thereon.

■ 2. The motion for a directed verdict specifically invoked a Wyoming statute of limitations, the pertinent portions thereof being as follows:

"Sec. 5569. Within four years an action for trespass upon real property; * * * an action for an injury to the rights of the plaintiff, not arising on contract."

The trial judge was of the opinion that the last part of said statute was applicable, and that it was "an action for an injury to the rights of the plaintiff, not arising on contract," and that the evidence showed it to have accrued more than four years before the petition was filed. The trial court was right. The statute was applicable and the bar was complete. The insistence that other limitation statutes of Wyoming with longer periods applied is untenable. An examination of these clearly shows that they are inapplicable, because the present action is "for an injury to the rights of the plaintiff, not arising on contract." It is not an action for the recovery of real property, nor on contract, in writing or otherwise, nor is it "an action for relief, not hereinbefore provided for."

The case of Gulf, C. & S. F. Ry. Co. v. Moseley, 161 F. 72, 20 L. R. A. (N. S.) 885, by this court, is in point. In said case the court applied a similar statute and held that dykes built by a railway company along the banks of the river, so as to deflect the current of the river, were permanent structures, and that "the whole injury, present and prospective, is recoverable in one action, maintainable immediately when the effect of the nuisance was first manifested."

■ Undoubtedly the recovery in the instant case, if at all, would be for the original and entire damages, which would include such as may have accrued and those that were prospective. An apt rule in such cases may be found in 20 R. C. L. 466, § 81, as follows:

"In all of those cases where the cause of the injury is in its nature permanent, and a recovery for such injury woud confer a license on the defendant to continue the cause, the entire damage may be recovered in a single action; but where the cause of the injury is in the nature of a nuisance and not permanent in its character, but of such a charac-

ter that it may be supposed that the defendant would remove it rather than suffer at once the entire damage which it might inflict if permanent, then the entire damage cannot be recovered in a single action; but actions may be maintained from time to time, as long as the cause of the injury continues."

Whatever the rule may be, plaintiff's property was destroyed and abandoned more than four years before he filed his suit. The purchase of the right of way over plaintiff's land, the contract with him for a diversion of the waters of Bad Water creek to the south side of the railroad, and the construction of the embankment and the roadbed thereon, all showed conclusively that the structure, which is alleged to have constituted a nuisance, was of a permanent and fixed character.

The authorities uniformly acknowledge difficulty in announcing a principle applicable generally to cases of this character. The rule has been stated to be that cases involving questions of nuisances, such as the one at bar, "must be decided in accordance with exact precedents rather than on principle." 20 R. C. L. 467, § 82. In such situation the case of Gulf, C. & S. F. Ry. Co. v. Moseley, supra, may be cited as an exact precedent for the instant case.

■ A point is made by the plaintiff to the effect that the court in granting the motion for a directed verdict did so upon that part of the statute invoked, which barred the "action for an injury to the rights of the plaintiff, not arising on contract," whereas defendant relied upon the first part, as follows: "Within four years an action for trespass upon real property."

An examination of the motion made by defendant's counsel shows that the motion was based upon the statute generally and that the reference to an action for trespass was a mere matter of identification. The court was correct in its ruling, as it has been held that flooding the lands of another does not constitute a trespass on real property. Suter v. Wenatchee Water Power Co., 35 Wash. 1, 76 P. 298, 102 Am. St. Rep. 881. The injury complained of was one to the rights of plaintiff, and, since it did not arise on contract, it would fall within that provision of the statute cited by the trial court.

■ 3. Wholly apart from the statutory bar, which precludes recovery, plaintiff was not entitled to recover on other grounds. Originally he had granted the right of way over his land, and had expressly authorized the defendant to change the channel of Bad Water Creek to the south side of the railroad.

Although plaintiff in his petition alleges that this was accomplished by bad engineering judgment, yet the whole petition is susceptible of an interpretation that it was the change itself which caused the injury and damages. Moreover, in connection with such damages in September, 1919, plaintiff gave defendant a written release, with apt recitals as follows:

"For the purpose of changing the present course of Bad Water creek upon the land above described, and for the same consideration and the benefits to be derived by me by reason of said channel being constructed and the course of Bad Water creek being changed, I hereby release said railroad company from all claims of damages which I now have or which may hereafter result to me, or to my land, by reason of such change being made."

It cannot be contended by plaintiff that this release was executed upon the theory that sound and correct engineering judgment would be employed in changing the channel of Bad Water creek. Upon the undisputed evidence the channel had been changed since the year 1912. It is deducible from the plaintiff's petition that the damages, both present and prospective, were ascertainable on the 15th of June, 1916, when he says they first became manifest. Plaintiff testified that the worst damages occurred in 1917; yet subsequent to that date he executed a full release, and in doing so acknowledged that the change of the channel would be beneficial to his property.

■ 4. Upon the evidence adduced by plaintiff, it would not be possible to separate the damages accruing to him while the railroad was being operated by its owner from those accruing under federal control. The court will take judicial notice that, during a portion of the time involved, the government, in its exercise of sovereign right, had taken over this railroad. During that time the defendant would not be liable for damages that might have accrued. Virginian Ry. Co. v. Mullens, 271 U. S. 220, 46 S. Ct. 526, 70 L. Ed. 915.

■ Furthermore, the jury could not have determined what contribution the seepage from plaintiff's reservoir had made to the alkalization of his land. The evidence was that the seepage from the two reservoirs, one owned by the plaintiff and the other by defendant, penetrated in the same direction, and down the same draw or swale, onto plaintiff's premises. The evidence, both in respect of the damages accruing during federal control, as well as the contribution made

by the two reservoirs, was not sufficiently definite as to bring it within the authority of United States Smelting Co. v. Sisam (C. C. A.) 191 F. 293, 37 L. R. A. (N. S.) 976.

The jury could properly deliberate alone upon competent evidence of all facts necessary to a recovery. Such evidence must be sufficient to enable the jury to base a reasonably reliable conclusion. Nothing could be left to conjecture.

Upon the evidence in the case, any verdict would have been necessarily conjectural. In view of the above, the judgment of the trial court should be affirmed.