[C. D. No. 3392. *En Banc.* February 3, 1950.]

*In the Matter of the Proceedings for the Discipline of* GUS L. THACKER, *Attorney at Law.*

¹Reported in 214 P. (2d) 507.

*Nelson R. Anderson,* for board of governors.

*J. H. Jahnke,* for respondent.

ROBINSON, J.—We have for consideration a report of the board of governors of the Washington State Bar Association of its elaborate inquiry into charges made against Gus L. Thacker, a member of the state bar, to the effect that he had violated his oath and duties as an attorney at law and the ethics of his profession. The report of the bar association closes with the following recital and recommendation to this court:

"The Board of Governors reports to the Supreme Court that each member of the Board has read and considered the complaint and the answer, the transcript and the exhibits, and unanimously finds that the report and findings of the Second Trial Committee herein above stated are true and correct and that they are supported by clear and satisfactory evidence and are approved and adopted by the Board and the Board is unanimously of the opinion that Mr. Gus L. Thacker has been guilty of unprofessional conduct and has violated his duties as an attorney at law, and that he has added to the offense committed against his clients the further offense of not admitting his wrong doing and seeking to defend himself by evasive and untrue testimony, and that he should be suspended for six months from the practice of the law. (Not voting: Edward R. Taylor, Chairman of Second Trial Committee and C. D. Cunningham, former counsel of respondent.)

"WHEREFORE, the Board of Governors of the Washington State Bar Association, after full consideration of the files and records, unanimously recommends that Gus L. Thacker be suspended from the practice of the law for a period of six months and herewith transmits its files and records pertaining thereto, including the complaint, notice of hearing, answer, first report of trial committee, objections and application for a new trial, the affidavits of J. H. Jahnke and Lloyd B. Dysart, the Order of the Board of Governors dated September 3, 1948, granting a new trial, the transscript of testimony of the second trial, the exhibits offered by both parties, the Association's Exhibits 10 through 17 inclusive and 19; and respondent's Exhibits J through V inclusive (except K and N), the report to the second trial committee and objections to said report."

Upon the organization of the Washington State Bar Association, as provided for by Laws of 1933, chapter 94, p. 397, the association, pursuant to § 8 of that statute, adopted a comprehensive set of rules for the discipline of attorneys. They were approved by this court, to go into effect on August 1, 1938, and, unfortunately, it has been found necessary to enforce them from time to time.

Rule XIII, Rules for Discipline of Attorneys, 193 Wash. 94-a, provides that, if a complaint is made to the board against an attorney for unprofessional conduct, and it appears, from a preliminary investigation, that probable cause exists that the attorney is guilty of unprofessional conduct, a formal complaint shall be filed.

In the instant case, a formal complaint against Mr. Thacker, verified under oath by the then president of the state bar association, was filed on April 29, 1948, and a copy thereof, together with the notice of hearing provided for in Rule IV, 193 Wash. 94-a and 95-a, was served on the respondent.

In due course, Mr. Thacker filed an answer, containing both admissions and denials as to various allegations of the complaint. In view of the grave importance of this matter to the respondent and to the board also, despite the limitations of space, we think it not only appropriate but neces-

sary to fully set out the charges made in the complaint and the respondent's answers thereto.

Paragraph No. 1 of the complaint reads as follows:

"That Gus L. Thacker was admitted to practice law as an attorney in the courts of the State of Washington on May 18, 1906; that his license to practice law was suspended on June 28, 1935, for a period of three years; that after the lapse of three years, he was engaged, and is now engaged in the practice of law as an attorney at law at Chehalis, Lewis County, Washington."

We assume that the only purpose of that paragraph is to establish jurisdiction and the venue of the hearing. See Rule XXVI, captioned "Place of Hearing," 193 Wash. 99-a, and Rule XXVII, 193 Wash. 100-a, captioned "Change of Venue." Clearly, there was no intention to charge the respondent with a past offense for which he had previously paid the penalty. His answer to paragraph No. 1 of the complaint read as follows:

"Answering Paragraph No. I of said complaint, respondent admits the same."

Paragraph No. 2 of the complaint reads as follows:

"That on July 26, 1946, an action was commenced in the Superior Court of the State of Washington for Lewis County, entitled, 'R. A. Gilleland and May B. Gilleland, his wife, vs. Alva R. Gilleland and Amy Gilleland, his wife, defendants, Cause No. 19101'; that defendants employed Gus L. Thacker to represent them and defend said action; that on August 12, 1946, Gus L. Thacker as attorney for defendants, entered an appearance in said cause and thereafter filed and served an answer therein; that trial was had on February 10, 1947, and argument on February 25, 1947, in said cause, and defendant's motion to reopen said cause was denied; that thereafter and on May 15, 1947, a decree was entered in favor of plaintiffs against defendants adjudging that certain real estate was held by plaintiffs and defendants in equal shares as tenants in common, provided, however, that defendant, Alva R. Gilleland was awarded a first and prior lien against said real estate in the sum of $500.00; that on May 22, 1947, plaintiff filed a cost bill and affidavit of mailing; that no motions or other proceedings were had in said cause until June 12, 1947, when Gus L. Thacker, as attorney

for defendants, served and filed notice of appeal and cost bond on appeal; that thereafter and on June 19, a transcript upon appeal was mailed to the Clerk of the Supreme Court; that on August 18, 1947, a proposed statement of facts was served and filed; that on August 28, 1947, plaintiff filed a proposed amendment to the statement of facts; that no statement of facts has been certified by the court."

To paragraph No. 2 of the complaint respondent made the following answer:

"Answering Paragraph No. II of said complaint, respondent admits the same."

Paragraph No. 3 of the complaint merely sets out that the docket of the clerk of this court shows the following entries in the attempted appeal of the defendants in the case referred to in paragraph No. 2 of the complaint. We quote only those items which may be material:

"1947
    Oct. 21 Motion to dismiss appeal
    Oct. 31 Ent'd—Motion to dismiss appeal is granted
    Dec. 2 Ent'd Judgment
    Dec. 2 Remitted"

Respondent's answer admitted paragraph No. 3.

Paragraph No. 4 of the complaint and respondent's answer thereto are, in view of the contentions of the board, and of respondent also, of primary importance. Paragraph No. 4 read as follows:

"That, at the time of the service of the statement of facts on August 18, 1947, upon Hull & Armstrong, attorneys for plaintiffs, Mr. Armstrong called the attention of Mr. Gus L. Thacker to the fact that the statement of fact was served and filed after the expiration of 90 days and would be stricken on motion; that on Monday, August 25, 1947, Mr. Thacker informed and advised Mrs. Amy Gilleland, defendant, that the Supreme Court had ruled against her; that she should bring her husband into his office and he would have papers ready for their signature looking to the sale and division of the property and its proceeds; that thereafter on Saturday, September 6, 1947, the said Thacker advised both defendants that the Supreme Court had ruled and decided the case against them; that he had taken the case through the Supreme Court and lost it; that it was

now necessary to sign a stipulation for a dismissal of the case in the Supreme Court without cost and affirmance of the judgment below; that he submitted a stipulation so providing to the defendants, who refused to sign it; that the advice and information so given and furnished defendants by their attorney was false and untrue, and thereby the said Thacker practiced deception and was dishonest in his dealings with his clients."

To paragraph No. 4 respondent made answer as follows:

"Answering Paragraph IV of the complaint, respondent admits that on or about the 18th day of August, 1947, at the time of the service of the statement of facts upon Hull & Armstrong, attorneys for plaintiff, that through inadvertence on his part he learned that the statement of facts had not been served and filed timely and that the same could be stricken on motion; denies that he advised Mrs. Gilleland that the Supreme Court had ruled against her; denies that he told Mrs. Amy Gilleland and her husband or either of them that the Supreme Court had ruled on their case and had decided against them; that he had taken the case through the Supreme Court and lost it; denies that he told them that it was necessary to sign a stipulation for dismissal but does admit that upon being apprised that the statement of facts had not been served and filed timely through inadvertence and error, he advised Mrs. Gilleland that they should sign a statement to the end that no further costs would be incurred in the proceeding and that the property could be divided in accordance with the judgment made by the lower court and denies each and every other allegation in said paragraph therein contained."

Paragraph No. 5 of the complaint read as follows:

"That for his services in the trial court, Gus L. Thacker charged and was paid the sum of $250.00, and also costs expended by him in the sum of $17.00, making a total of $267.00; that after the trial in the Superior Court, Gus L. Thacker asked for and received the sum of $500.00 from his clients for the purpose of an appeal; that in the course of said appeal said Thacker paid $92.00 for the statement of facts, $10.00 for a cost bond, and approximately $10.00 on a transcript on appeal, and paid the clerk of the Supreme Court an appearance fee of $5.00; that the expenditures for said items amount approximately to $117.00; that said Thacker, although demand was made therefor, refused, and

refuses to refund to defendants said sum of $500.00 or any part thereof; that the services rendered by said Thacker on appeal were worthless and a detriment to the defendants; that his retention of the sum of approximately $383.00, over and above expenditures, for attorney's fees is excessive, exorbitant and unconscionable."

To paragraph No. 5 of the complaint respondent answered as follows:

"Answering Paragraph V, respondent admits that he charged the sum of $250.00 and the additional sum of $17.00 expended by him for costs or a total of $267.00 for representing Mrs. Gilleland and her husband in a lower court; admits that after the trial in the Superior Court he was paid by Mrs. Gilleland and her husband the sum of $500.00 for the purpose of appealing the case; that he paid out the sum of $92.00 for the statement of facts; $10.00 for cost bond and approximately $10.00 on a transcript on appeal; paid the clerk of the Supreme Court an appearance fee of $5.00, amounting to approximately the sum of $117.00 and denies each and every other allegation in said paragraph therein contained and alleges that he has heretofore tendered to R. A. Gilleland and May B. Gilleland, his wife, [sic] the said sum of $500.00."

In connection with paragraph No. 5 of the complaint and the answer thereto, we may note that, among the exhibits introduced at the hearing of the complaint in this proceeding, the following appears:

"May 15, 1948

"Mr. A. R. Gilleland
Randle
Washington
"Dear Mr. Gilleland:
"I am herewith tendering to you, ten American Express orders in the aggregate of $500.00, payable to yourself, in return of all moneys which you have paid me in the appeal of the case of R. A. Gilleland and May B. Gilleland, his wife vs. Alva R. Gilleland and Amy G. Gilleland, his wife, to the Supreme Court of the State of Washington.

"Very truly yours,
[Signed] Gus L. Thacker
GUS L. THACKER"

It is, therefore, established by clear, cogent, and undisputable evidence that the five hundred dollars which the Gillelands paid to the respondent, Thacker, for the prosecution of the appeal of their case, was not repaid to the Gillelands until May 15, 1948, about six and one-half months after the appeal was dismissed by this court on their adversary's motion to dismiss, for the reason that Thacker had failed to timely file a statement of facts, and about sixteen days after the complaint of the state bar association against Thacker was filed and served on him, together with notice that a hearing thereon would be held, and requiring him to answer the complaint within ten days. The record does not show the date Thacker's answer was filed, but it was verified by him on May 15, 1948, the same day that he repaid the five hundred dollars.

On June 28, 1948, pursuant to the rules for the discipline of attorneys, a hearing was held in the county of respondent's residence (Lewis) by a duly constituted trial committee, composed of a member of the board of governors, Mr. C. J. Coleman, and two members of the Lewis County Bar Association, Mr. Lloyd Dysart and Mr. W. N. Beal. We have before us a complete transcript of that hearing, containing ninety-three pages of the evidence therein taken. At the hearing, Mr. Nelson Anderson represented the board of governors as its counsel. The respondent appeared in person, and was represented by his attorneys, J. H. Jahnke and C. D. Cunningham of the Lewis county bar. The principal witnesses called by the complaining state bar were Alva Gilleland and his wife, Amy Gilleland, the respondent's erstwhile clients, and Ethel M. Talmadge, a cousin of Mr. Gilleland. Respondent, Thacker, testified at length on his own behalf, and the six documentary exhibits introduced by the complainant and the four exhibits introduced by the respondent are attached to the transcript of the evidence filed in this court.

In due course, the trial committee made its report to the board of governors, calling to its attention that paragraphs Nos. 1, 2, and 3 of the complaint were admitted by the

respondent and finding that the allegations of paragraphs Nos. 4 and 5 were sustained by a preponderance of the evidence taken at the hearing. There was attached to the report a transcript of the testimony elicited at the hearing, together with the exhibits therein introduced.

The report closed with a recommendation that the respondent be directed to pay the costs taxed against his clients in the abortive appeal and that he be suspended from the practice of law for a period of ninety days. On August 25, 1948, the respondent verified a document which he headed, "Opposition to Report and Application for Presentation of Additional Evidence and For Hearing De Novo." In this lengthy pleading, if it may be so called, it was emphasized that the report of the trial committee contained no finding to the effect that Thacker *"wilfully"* failed to timely serve and file a statement of facts in the appeal of the Gilleland case. Respondent also made a bitter attack upon the veracity of the Gillelands and contended that he had not had a fair and impartial hearing. His chief contention as to that was that Lloyd Dysart was prejudiced against him and was not qualified to be a member of the trial committee. Attached to the pleading was an affidavit by respondent's attorney, Mr. Jahnke, attempting to establish that Mr. Dysart was prejudiced against Thacker. An answering affidavit was filed by Mr. Dysart, from which we quote briefly as follows:

". . . Your affiant is confident in his own mind that at no time did he tell Mr. Jahnke that he was so prejudiced against the respondent that he felt unqualified and unfit to sit as a member of the committee. For had your affiant so felt he certainly would not have sat as a member. . . ."

Referring to the matter raised in the Jahnke affidavit, Mr. Dysart said, in part:

". . . your affiant believes that Mr. Thacker had as fair and impartial a trial as could have been experienced from the hands of any members of the Lewis County Bar under the circumstances. That your affiant, speaking solely for himself, has no objection to the granting of a re-hearing, and would personally far rather see a re-hearing granted

than to have Mr. Thacker and his counsel, or anyone else, feel that your affiant did not accord Mr. Thacker a fair and impartial trial."

On September 3, 1948, the board of governors reviewed the report of the trial committee, the exceptions taken thereto by the accused, and his application for the presentation of additional evidence and for a hearing *de novo*. Mr. Nelson Anderson, acting for the association, made an argument in support of the trial committee's report, and Mr. Jahnke presented argument in support of his client's objections to the report. Board members Clarence J. Coleman and C. D. Cunningham, took no part in the hearing, Mr. Coleman having presided at the first trial and Mr. Cunningham having assisted Mr. Jahnke in representing the accused defendant at that trial and having subsequently become a member of the board of governors.

As a result of the deliberations of the board on September 3, 1948, and its examination of the trial record, the board entered findings to the effect: (1) That the report of the trial committee and its findings were amply supported by the evidence; (2) that the accused attorney was in all respects afforded a fair and impartial hearing; and (3) that Lloyd Dysart acted fairly, ably, and impartially as a member of the trial committee. The board also entered an order on that day that the matter be set for trial *de novo* before a special trial committee to be appointed by the president of the association, to consist of two members of the association practicing law in Seattle and a member of the board of governors to be designated by the president of the association. It was further ordered that the hearing be held as soon as possible and that a copy of the order be forthwith supplied to counsel for the respective parties.

Pursuant to the order of September 3, 1948, the then president of the association designated Edward R. Taylor, a member of the board of governors, and A. Vernon Stoneman and Julian O. Matthews, members of the association, practicing law in Seattle, as the special trial committee provided for in the order.

The *de novo* hearing granted by the order of the board of governors on September 3, 1948, was, pursuant to due notice, held before the trial committee, above mentioned, in the office of the board of governors on December 3, 1948. Nelson Anderson appeared as counsel for the board; J. H. Jahnke, of the Lewis county bar, appeared as counsel for respondent, Thacker.

At the opening of the hearing, Mr. Jahnke stated that he had observed that Rule XXV, of the Rules for Discipline of Attorneys, 193 Wash. 99-a, provided that a member of the trial committee might be challenged for cause. He then questioned the members of the committee as to whether they had been interviewed by the Gillelands, the complaining witnesses. Mr. Taylor answered that he did not know them and had never met them. Mr. Matthews and Mr. Stoneman also answered in the negative. Mr. Jahnke then inquired: "Have the facts in this case ever been presented to any of you before?" To that question Mr. Taylor answered: "I was a member of the Board last September when the matter came up before the Board." Mr. Jahnke then continued the interrogation of Mr. Taylor as follows:

"Mr. Jahnke: At that time you joined in a finding, did you not? Chairman Taylor: I did. Mr. Jahnke: And you were of the opinion then that that finding was the truth? Chairman Taylor: I was of the opinion from the record; yes. Mr. Jahnke: You still entertain that opinion now? Chairman Taylor: No; I have no conscious knowledge of the thing. Mr. Jahnke: Has anything occurred since that time to cause you to change your opinion of the finding of fact that you made at that time? Chairman Taylor: I haven't discussed the matter with anyone since that day. Mr. Anderson: The finding you refer to was the finding made by the Board of Governors? Mr. Jahnke: Yes. And you were a member of the Board of Governors at that time? Chairman Taylor: Yes. Mr. Jahnke: And participated in the finding? Chairman Taylor: That is right. Mr. Jahnke: Making a finding of the guilt of the accused here now? Chairman Taylor: We were passing on review. We thought he had a fair trial. Mr. Jahnke: I will ask this be identified, the Finding of the Board of Governors. (Document by the Reporter marked as Respondent's Exhibit J for identification.)

"MR. JAHNKE: Mr. Taylor, handing you Respondent's Exhibit for identification, J, I will ask you whether you joined in that? CHAIRMAN TAYLOR: Yes; that's right. MR. JAHNKE: You did at that time pass upon the hearing being had here today, did you not? CHAIRMAN TAYLOR: I did. MR. JAHNKE: And under those circumstances, do you think you can sit here with a fair and open mind in view of the determination you have previously made with the issue to be decided in this hearing? CHAIRMAN TAYLOR: I think I can sit with a fair and open mind. MR. JAHNKE: If you were in the situation of this respondent here, would you be willing to have a committee sit who had made the same determination of the issue to be heard tried here today as you have heretofore done? CHAIRMAN TAYLOR: Yes. MR. JAHNKE: You would? CHAIRMAN TAYLOR: Yes. MR. JAHNKE: Has anything occurred since you made that determination to cause you to change your opinion? CHAIRMAN TAYLOR: No. I have had no discussion with anybody since that time. MR. JAHNKE: Then you still have that opinion, do you? CHAIRMAN TAYLOR: I have the opinion that he had a fair hearing before but that would not influence me in this proceeding today. I am willing to listen to the evidence with an open mind, if that is what you mean. MR. JAHNKE: Did you read the record in that case? CHAIRMAN TAYLOR: Yes. It was before us and we all read it. I read it. MR. JAHNKE: The findings make this recitation, 'The Board has examined the files and records herein and heard arguments of counsel and finds that the report of the Trial Committee and its findings are amply supported by the evidence.' That was your opinion of the evidence at that time? CHAIRMAN TAYLOR: That's right. MR. JAHNKE: Now, if the same evidence were introduced here today, would you still be of the same opinion? CHAIRMAN TAYLOR: I don't know. I would like to see the witnesses. I would like to hear them. MR. JAHNKE: I say, if the same evidence were introduced? CHAIRMAN TAYLOR: I am not pre-judging the thing. I am willing to listen to the evidence with an open mind. MR. JAHNKE: Without any reflection upon the integrity of Mr. Taylor here, for the purpose of the record I am going to challenge him. CHAIRMAN TAYLOR: I will have to deny your request at this time. MR. JAHNKE: Allow us an exception. [At this point a ten-minute intermission was had.]"

When the hearing was resumed, Mr. Taylor said:

"CHAIRMAN TAYLOR: I might state the reason we had this short adjournment was that we had a meeting between

the three of us here to determine whether or not there was anything in the record, or anything in the procedure, rather, which would bar me from participating as a member of the Trial Board and we determined there was not, so you may go ahead."

The board has transmitted to us a complete record of the *de novo* hearing held on December 3rd, including a transcript of more than one hundred and fifty pages of evidence given at the hearing, supplemented by two depositions and nineteen exhibits introduced by the respondent and ten exhibits offered by the board.

The oral evidence given before the second trial committee was, for the most part, given by the same witnesses who testified at the first hearing. We also have, in the record before us, the report of the second trial committee. From this report it appears that, in the second hearing, as in the first, there were sharp conflicts in the evidence, particularly as to whether or not Thacker told the Gillelands that the supreme court had heard the appeal and decided the case against them, and whether or not he had told his clients of his failure to timely serve and file the statement of facts in their case. The report of the second trial committee to the board was very adverse to Mr. Thacker. The substance of that report was stated in the report and recommendation of the board to this court and may be found in the first of the many quotations made in this opinion.

█ Counsel for Mr. Thacker made written objections to the report of the second trial committee and requested leave to argue the matter orally before the board. The request was not granted. He contended in his objections, and contends in his briefs filed in this court, and contended in the oral argument before it, that Edward R. Taylor should have been disqualified from serving on the second trial committee because, as a member of the board, he had joined his fellow members in approving the findings made by the first trial committee. We have heretofore quoted Mr. Jahnke's cross-examination of Mr. Taylor when he challenged his right to sit. We are entirely satisfied that Mr.

Taylor's answers established his total lack of bias or prejudice.

We are further satisfied that the attack upon Lloyd Dysart's fitness to sit as a member of the first trial committee was unwarranted.

We reach the above conclusions concerning Mr. Taylor and Mr. Dysart from the records of the two trials, supplemented by the fact that we think it right and proper for us to take judicial knowledge of their outstanding reputations among their fellow members of the bar, the judges of our courts, and the communities in which they reside and practice their profession.

Mr. Thacker further objected that the factual findings of the second trial committee were not sustained by the weight of the evidence, and he further asserted that its decision was arrived at through passion and prejudice. His objections were renewed during the argument of the case in this court.

■ Some of the findings of the second trial committee were based upon sharply conflicting evidence. It is a very familiar rule that, when a judge of a trial court has made factual findings on conflicting evidence, a reviewing court will not ordinarily disturb them. That rule is logically based on the fact that the trial judge saw and heard the witnesses and heard and observed them give their testimony, and was, therefore, in a much better position to judge of their veracity and candor than the judges of a reviewing court, who see only a typewritten transcript of the evidence, can possibly be.

That reasoning, of course, applies directly to the instant case. The trial committees were in a vastly better position to evaluate the testimony of the witnesses on both sides of the controversy than we can possibly be from a mere reading of the records, complete as they are.

We will, therefore, accept the factual findings made by the second trial committee and adopted by the board of governors. Perhaps, the findings of a trial committee do not have the force of factual findings formally made by judges of a court; yet they are made by persons chosen to

make them according to the rules established by the board of governors of the state bar in carrying out the legislative will and purpose declared in the Laws of 1933, chapter 94, p. 399, § 8.

Two or three days before this case was assigned for argument in this court, the respondent, through his counsel, filed two affidavits with exhibits attached, accompanied by the following motion:

"Comes now Gus L. Thacker, by his undersigned attorney, and moves the Court to consider the attached Affidavits and Exhibits thereto attached as a part of the record to be considered by this Court in this proceeding, and that the Motion be heard at the time of the hearing upon the merits on the 26th day of September, 1949."

The purpose of the filing of the affidavits was frankly shown in one of them as follows:

"Your Affiant makes this Affidavit to the end that this Court may be properly advised of the credibility of the testimony of the complaining witnesses in this cause, whom your Affiant asserts to be unworthy of belief, and prays that this Affidavit together with the Affidavit of Gus L. Thacker, presented herewith be considered by this Court in passing upon the weight to be attached, if any, to the testimony of the complaining witnesses herein."

Several months after argument in this matter was heard by this court, counsel for the board filed controverting affidavits, accompanied by a note that he had delayed doing so because he thought that the court would not consider the respondent's affidavits, above referred to, as a part of the record of the case. He was quite right about that. We have no disposition to establish a precedent that would invite appellants or respondents, in cases pending in this court, to file affidavits merely to impeach witnesses who testified in the cause during the trial thereof in the court below.

Having examined, with care, the full and complete records of the board of governors in this matter, we have concluded to adopt the recommendation of the board of governors that Gus L. Thacker be suspended from the practice of law in this state for a period of six months.

In cases of this kind, where an attorney is suspended or disbarred by this court, it has been the custom to fix, in the opinion ordering such suspension or disbarment, the date when such suspension or disbarment will become effective. See *In re Beakley,* 6 Wn. (2d) 410, 107 P. (2d) 1097; *In re Jett,* 6 Wn. (2d) 724, 108 P. (2d) 635.

Pursuant to the recommendation of the board of governors of the state bar association, it is ordered that Gus L. Thacker be suspended from practicing law in the state of Washington for a period of six months; the period of suspension to begin thirty days after the filing of this opinion.

ALL CONCUR.

March 6, 1950. Petition for rehearing denied.