Walter W. FALLON, Appellant
and Licensee,

v.

WYOMING STATE BOARD OF MEDICAL
EXAMINERS, Appellee.

No. 3610.

Supreme Court of Wyoming.

May 29, 1968.

John O. Callahan, Torrington, William H. Brown, of Brown, Drew, Apostolos, Barton & Massey, Casper, for appellant.

James E. Barrett, Atty. Gen., Dean W. Borthwick, Sp. Asst. Atty. Gen., Cheyenne, for appellee.

Before GRAY, McINTYRE, and PARKER, JJ.

GRAY, Justice.

In March 1962 Walter W. Fallon was licensed as a physician and surgeon by the State Board of Medical Examiners and commenced practice in the town of Basin, Wyoming.

Early in the year 1963 Dr. Greer, President of Wyoming Medical Service, Inc. (Blue Shield), complained to the Wyoming State Medical Society that the licensee on three occasions appeared to have been "collecting from Blue Shield for services not performed." The matter was then apparently referred to the grievance committee of the society and on July 30, 1963, it filed a report with the society which in turn referred the matter back to the grievance committee "for the recommendation as to specific action to be taken by the Council of the State Medical Society as required by the Constitution and By-laws." As a result the committee, after some additional investigation, advised the then attorney of the licensee that it would hold a hearing concerning the problems and charges on August 11, 1964, at Cheyenne, Wyoming, and directed that the licensee bring with him all records of some twenty-four patients from his office, "including his claims to Blue Shield for payment in connection therewith."

The licensee failed to appear before the committee and thereupon the committee proceeded to compile a report to the council of the state medical society. In such report the committee separately stated the information the committee had gathered and its conclusions with respect to some eighteen patients, all involving, with one

exception, billings by the licensee to Blue Shield, and among other things stated:

"The evidence indicates to the Committee that Dr. Fallon's conduct was improper and he has been given an opportunity and refused to make an explanation of what appear to be irregularities of a serious nature. The Committee feels compelled to conclude and hereby charges Dr. Walter W. Fallon has been guilty of misconduct and unethical and unprofessional conduct which did deceive and harm the public and charges that he wilfully used false and fraudulent statements in the practice of medicine."

While the record is not entirely clear, it appears that the state society on September 10, 1964, caused the committee report to be filed with the state board of medical examiners, and under date of October 21, 1964, pursuant to § 33–340, Section 3, W.S.1957, the board gave notice to the licensee that the Wyoming State Medical Society, the Wyoming Medical Service, Inc. (Blue Shield), and the Wyoming Hospital Service (Blue Cross), had filed a complaint with the board requesting that the board consider suspending or revoking his license, and simply stated, "The nature of the offense charged by the complainants is the use of false or fraudulent statements in documents that were prepared by you in your practice," which was in the language of paragraph (g) of § 33–340, Section 1, W.S.1957. The board also advised that the matter was set for hearing before it on December 15, 1964, at Casper, Wyoming, and further requested that the licensee furnish within thirty days "all X-rays, consultation reports and completed records pertaining to the following patients." The patients named were Jeff Brinkerhoff, Arnold Kelly, Karen Clark, and Adella Marcus. Later it was discovered that the board was referring to Kelly Arnett rather than Arnold Kelly.

The record does not show that a copy of the so-called complaint was served along with the notice, but in any event the licensee, shortly after receipt of the notice, filed a motion with the board for a bill of particulars, requesting a more definite statement concerning the facts and the nature of the charge by identifying "the exact statements" alleged to be false and fraudulent and "the specific documents connected with the practice of medicine in which said statements were wilfully used." No direct response appears to have been made by the board to that motion. Rather, the attorney for the board advised the licensee that "The complainant [not the licensee] has on this date moved the Board to notify you more specifically as to the charges that have been filed. This letter is being forwarded to you pursuant to said Motion and the specific charges are set forth below." What was stated as "specific charges" was simply a verbatim copy of that portion of the committee's report quoted above.

About that same time the attorney for the complainants also filed a so-called "Bill of Particulars," which with some embellishment simply repeated the information contained in the grievance committee report. Following this the licensee renewed his motion for a bill of particulars, which was resisted by the complainants, and in this resistance it was stated:

"It is not an adversary proceeding and no criminal proceeding or civil action has been commenced. The only notice required to be given to Doctor Fallon is that stated in the statute, to-wit: 'a statement of the nature of the offense charged'. This statement has been furnished by the State Board of Medical Examiners. If the State Board of Medical Examiners cares to make it more complete, that is the responsibility of the State Board of Medical Examiners under the statute.

"The motion is specious, dilatory and intended to harass the State Board of Medical Examiners and others."

Apparently on the basis of this representation the licensee's motion was denied and thereafter the licensee filed an answer and response wherein he generally denied any

willful, improper, dishonest, unethical, or unprofessional conduct, and the willful use of any false or fraudulent statements in the practice of medicine. The answer also contained allegations as to the nature of his defense on each and every patient named in the bill of particulars.

Thereafter a hearing was held commencing on the date fixed by the board's notice, which was concluded the next day. Following the hearing the board, under date of February 8, 1965, entered its order and under the designation of "FINDINGS AND CONCLUSIONS AND ORDER" stated:

"The Board finds W. W. Fallon, guilty of violating subsections (f) and (g) of Section 33–340, Wyoming Statutes, 1957, in that:

"1. He was dishonest in that he did knowingly and purposely submit false claims for medical services to the Wyoming Medical Service.

"2. His conduct was unprofessional and unethical in that he misrepresented the severity of an illness to a patient, that he submitted her to major surgery without proper pre-operative study and that he did surgery upon her after she was in an anesthetized condition without her knowledge and without consulting and obtaining the permission of her husband.

"3. His conduct was unprofessional and unethical in that he has exaggerated findings and diagnosis on several occasions in order to obtain larger fees for his services.

"4. His conduct was deceitful in that he has practiced ordinary dental work and represented this work as complicated oral and maxillofacial surgery.

"5. His conduct was unprofessional in that he failed completely to maintain accurate and adequate medical records.

"WHEREFORE, THE BOARD concludes that in the public interest the license of W. W. Fallon to practice medicine in the State of Wyoming should be suspended."

On the basis of the foregoing the board further concluded and ordered that the license of the licensee be suspended for a period of four years with the proviso, however, that after the first year the licensee might petition the board "for a conditional reinstatement" of his license subject to revocation for any reason deemed sufficient by the board during the four-year period.

Following this the licensee, pursuant to § 33–340, Section 5, filed his notice of appeal with the board and also filed with the district court a petition and amended petition for a trial de novo and relief from the order of the board. In substance it was claimed that the licensee had not received a full, fair, and impartial hearing before the board. Reference will later be made to certain of the grounds alleged as a basis for such claim. It was also claimed that the findings of the board are not supported by the evidence, are contrary to law, and are insufficient to disclose the evidence upon which the board relied in support of its findings or conclusions; that findings were made on matters not within the charges of the complaint nor the board's notice; and that the penalty imposed was not justified by any of the charges made nor the evidence offered in support thereof and constituted an abuse of discretion.

Following the filing of the petition in the district court the board filed a motion to intervene, which was granted, and thereafter filed its answer asserting that the petition failed to state a claim upon which relief could be granted, generally denied each and every allegation of the licensee's petition, affirmatively alleged that the proceedings before the board contained sufficient and substantial evidence in support of the board's findings and order, and prayed that relief be denied and the board's order affirmed. No answer was filed by the complainants and the board took over the defense of its order.

It resisted the taking of any evidence not contained in the proceedings before the board, which was overruled in part, and although the trial court did receive some ad-

ditional evidence it was generally limited to evidence that the licensee claimed he was not afforded an opportunity to present in the proceedings before the board.

Following the hearing on the matter the trial court, with the exception of finding number five, which the court partially set aside for the reason that no such charge was ever made or noticed, affirmed the action of the board. This appeal followed.

The claimed errors advanced here as related to the proceedings before the board are substantially the same as those advanced in the trial court. It is further claimed, however, that the trial court erred in not granting the licensee a trial de novo as provided in Section 5, supra, and in not remanding the proceeding to the board for further consideration inasmuch as the board's finding number five was partially set aside.

In disposing of this appeal we have concluded that it is unnecessary specifically to notice several of the claims advanced by the licensee. After careful review of the whole of the record we are persuaded that the trial court was in error in certain respects and the matter must be returned to the board with directions for further proceedings. Consequently the complaints of the licensee to a large extent, particularly with respect to a fair hearing, are not likely again to be involved. We will, however, point out the principal matters that prompt us to reject the board's actions.

Primarily, our conclusion that the proceeding must be returned to the board is based upon the failure of the board to make basic findings of fact in support of its finding number one, which in substance is nothing more than a conclusion that licensee had violated the provisions of paragraph (g) of § 33–340, Section 1, W.S. 1957, and for the further reason that we are unable to accept the view of the trial court that no circumstances were presented creating any serious doubt as to the fairness and impartiality of the board.

▆▆ In connection with both of these matters we first turn to the general con-

cept that the board seems to have had concerning a disciplinary proceeding involving one of its licensees. To us it is quite apparent that the board at the outset was misled as to the nature of the proceeding and its responsibilities in connection therewith. Contrary to representations of counsel for the complainants, this was an adversary proceeding. Chicago, Burlington & Quincy Railroad Company v. Bruch, Wyo., 400 P.2d 494, 497; Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 777, 82 L. Ed. 1129, rehearing denied 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129. The United States Supreme Court has also recently held that such a proceeding is not only an adversary proceeding but is "of a quasi-criminal nature." In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117. The burden was upon the complainants to present their case in a proper way and to state rather precisely and to prove the charges of the use of "false or fraudulent statements" by clear and convincing evidence. Schaffer v. Standard Timber Company, 79 Wyo. 137, 331 P.2d 611, 615. "Moreover, fraud will not be imputed to any party when the facts and circumstances out of which it is supposed to arise are consistent with honesty and purity of intention." Twing v. Schott, 80 Wyo. 100, 338 P.2d 839, 840. It was not simply a matter whereby, as represented to the board, "The complainants appear within the spirit and intent of the statute to present to this board what *information* they have available to invoke their powers with respect to the licensing of physicians and surgeons in this state" (italics supplied), and thereupon place the burden upon the licensee at his peril to undertake to "explain" to the satisfaction of the board what appeared to the complainants and grievance committee to be "irregularities of a serious nature."

▆▆ With respect to the matter of the lack of proper findings, it is a well-recognized rule where a limited right of review such as prevails in this state is granted from the decision of an administrative agency, Rayburne v. Queen, 78 Wyo. 359,

326 P.2d 1108, 1109; Williams v. Zoning Adjustment Board of City of Laramie, Wyo., 383 P.2d 730, 733, such agency must find the basic facts upon which its decision rests. Unlike the rule observed in a proceeding tried in the district courts of this state, the requisite basic findings will not be implied from ultimate findings. Neverdahl v. Linder, 141 Colo. 186, 347 P.2d 512, 515; Roseburg Lumber Company v. Chambers, 223 Or. 294, 355 P.2d 606; 2 Davis, Administrative Law Treatise, § 16.07, p. 455 (1958). Without such basic findings we can only guess as to how the conclusion here was reached with no assurance that the board "has made a reasonable analysis," California Motor Transport Co. v. Public Utilities Commission, 59 Cal.2d 270, 28 Cal.Rptr. 868, 379 P.2d 324, 327, of the material issues raised with respect to each of the five patients its findings and order apparently involved and with no assurance that the board had not acted under an assumption of facts undisclosed in the evidence properly before it relating to those patients. No presumption of regularity will prevail when such an irregularity appears on the face of the board's order. Roseburg Lumber Company v. Chambers, supra, 355 P.2d at 613. Ordinarily in a situation such as this we would simply return the proceedings to the board for the purpose of making proper findings. That, however, does not appear to be feasible in view of a change in the membership of the board occurring in the interim and in view of certain other circumstances bearing upon the question of a fair hearing.

■ With respect to a fair hearing, it is fundamental that principles of justice and fair play require "an orderly proceeding appropriate to the case or adapted to its nature, just to the parties affected, and adapted to the ends to be attained, one in which a person has an opportunity to be heard, and to defend, enforce, and protect his rights before a competent and impartial tribunal legally constituted to determine the right involved; representation by counsel; [and] procedure at the hearing consistent with the essentials of a fair trial according to established rules which do not violate fundamental rights." 2 Am.Jur.2d, Administrative Law, § 353, pp. 166–167.

The licensee in his brief presents several claimed errors involving one or more of the elements embraced within the above general principles, such as the failure of the board to require complainants to submit a more specific designation of the documents and the statements therein that were claimed to be false or fraudulent; the arbitrary action of the board in insisting upon a one-day hearing which resulted in a disorderly procedure and deprived the licensee of a reasonable opportunity to meet the charges against him as required by law, Morgan v. United States, supra, 304 U.S. 1, 58 S.Ct. at 776; the admission, over objection, of evidence that was unrelated to the charges and prejudicial; the ex parte review by the board prior to hearing of all of the *information* filed with the board by complainants; that the hearing was conducted in a prejudicial and biased manner; and that the board had prejudged the matter and failed impartially to weigh the evidence adduced at the hearing.

As indicated above, we think many of the occurrences to which licensee points in support of the contentions and which appear to have some merit were brought about by the erroneous concept of the nature of the proceeding which the board had and which will no doubt be corrected upon return to the board. Others were inconsequential. That, however, does not furnish a completely satisfactory answer to the problem confronting us and we are particularly concerned with the question of whether or not the members of the board, aside from their individual philosophies concerning the nature of the charges made, were able impartially to discharge and did so discharge their functions notwithstanding the manner in which this proceeding was initiated and what was done prior to the hearing.

■ While some liberality will be accorded to a pleading initiating a proceeding

before an administrative agency, Glenn v. Board of County Commissioners of Sheridan County, Wyo., 440 P.2d 1, which in view of Ruffalo, supra, must now be tempered where the proceeding is "quasi-criminal," what was done here is wholly inexcusable. Although the notice of the board stated that a "complaint" had been filed containing statutory charges against the licensee, the plain fact is that no complaint, as such term is understood in commencing an adversary proceeding such as this, was ever filed.

There was filed instead a copy of an unsworn written report which the grievance committee had previously made to the state medical society. Although that report was replete with hearsay, speculation and conjecture, we do not pass on the question of whether or not the committee properly discharged its function so far as the state medical society was concerned. What seems to have been overlooked, however, is that such committee had no legal standing so far as the board was concerned and was performing no authorized function for the board.

Notwithstanding, it is conceded that the board on its own initiative proceeded to review this non-juridical report relating to some eighteen patients and selected therefrom the four cases named above which were regarded by the board as "typical" of the complainants' accusations. It is asserted by the licensee and borne out by the record that this was done in order to complete the hearing in one day. The selected cases, by the way, were cases wherein the X-ray reports—not the X-ray films—purportedly revealed a discrepancy between the claim for payment made to Blue Shield and the medical services rendered to the named patients by the licensee. While it is suggested by the board that the notice of hearing did not confine the statutory charge to those cases, we think any reasonable interpretation of the notice is to the contrary.

As the matter stood up to the time of the hearing, the report of the committee and the so-called bill of particulars contained information most damaging to the licensee concerning some fifteen patients and other information extraneous to the matters to be heard. Perhaps the most prejudicial matter in the entire report was the recital of the conclusion which that committee drew from the contents of the report and submitted ex parte to the board that licensee was guilty of using false and fraudulent statements in his practice. The report also made clear that the conclusion to a large extent was predicated upon licensee's failure to appear before the committee at the time requested, which also was wholly improper, Harris v. State, 23 Wyo. 487, 153 P. 881, 888, particularly when it is considered that there was no duty upon the licensee to appear so far as the board was concerned. Besides neither the committee nor the board was entitled as a matter of right to the private records of licensee described in their notices. Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574. The harmful effect of the report was compounded when the evening before the hearing the board again reviewed all of the information that had been submitted by the complainants and sent word to counsel for the parties that it was still satisfied that "an adequate investigation of these problems" could be had by limiting the hearing to the four patients named in the notice of the board.

Our responsibilities bearing upon the contention of bias and prejudice on the part of members of the board are well stated in State ex rel. Beddall v. Lonctot, 62 Wash.2d 845, 384 P.2d 877, 883–884, 97 A. L.R.2d 1201:

" * * * In our highly complex society, the usefulness of these [administrative] agencies is apparent. Their use and importance emphasize the necessity for their operation in a manner which will leave unblemished the faith of the American people in their government. These considerations make apt the following quotation from Inland Steel Co. v. Na-

tional Labor Relations Board, 7 Cir., 109 F.2d 9, (1940), where the court said:

'The Act authorizes the Board to enter an order upon a complaint alleging unfair labor practices, only after a "hearing." This must mean a trial by a tribunal free from bias and prejudice and imbued with the desire to accord to the parties equal consideration. There is perhaps no more important right to which litigants are entitled than that they be given such a trial. Its impairment, ipso facto, brings the court, and administrative bodies as well, into public disrepute, and destroys the esteem and confidence which they have enjoyed so generally. Time and experience have demonstrated that the public, as well as litigants, will tolerate the honest mistakes of those who pass judgment, but not the biased acts of those who would deprive litigants of a fair and impartial trial. Foremost among the responsibilities imposed upon a reviewing court, is to make sure that this foundation of our Judicial system be not undermined.' 109 F.2d p. 20."

■■■■ We also start, of course, with the presumption that members of the board "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." United States v. Morgan, 313 U.S. 409, 61 S.Ct. 999, 1004, 85 L.Ed. 1429. See also National Labor Relations Board v. Donnelly Garment Co., 330 U.S. 219, 67 S.Ct. 756, 91 L. Ed. 854. It is also presumed the action of the board "was right." Jassman v. Wulfjen, 71 Wyo. 261, 257 P.2d 334, 336. The burden is on the challenging party to overcome the presumptions. While this is a relatively heavy burden, we must confess that we are more than disturbed by the impact that the committee report might well have had upon the members of the board from the outset. The three members composing that committee are past presidents of the state medical society and unquestionably held in high esteem by the society and by members of the board. Likewise, the unqualified endorsement of that report by the society itself and the submitting of that report ex parte to the board can scarcely be ignored.

■■■■ Whether that was done intentionally or unintentionally by the complainants is not now important. The fact is that it placed the board in an almost impossible position for which it was not initially responsible. Despite the good intentions of the members of the board to disregard the report and what the committee did, our responsibilities are clear and we think we cannot under the circumstances carry the presumptions favoring the board to the extent of holding that the members of the board could efface from their minds the improper and inflammatory extraneous matters presented to them ex parte prior to hearing as trained, knowledgeable, and experienced finders of fact might do, and thus impartially weigh the evidence adduced at the hearing. Consequently we cannot accept the view of the trial court that the licensee was accorded the fair and impartial hearing to which he was entitled.

The order and judgment of the trial court is reversed with instructions to remand the case to the board for rehearing in keeping with the views herein expressed.

HARNSBERGER, C. J., not participating.

McINTYRE, Justice, concurring with Justice GRAY.

I feel justified in concurring in the opinion with Justice GRAY in this case because of a situation which he has not discussed.

The record shows clearly that Blue Cross, Blue Shield and the Wyoming State Medical Society were complainants in the hearing before the Board of Medical Examiners. Dr. Bernard J. Sullivan at one point stated the Board started out to investigate the complaint of Blue Shield and from that it got into other matters. Although the district court in its review un-

dertook to change the actual title of the cause, it did not erase the fact that Blue Shield was the principal complainant.

During the time of our consideration of the appeal in this case, information from Blue Shield was made public through a general news release in the state, concerning membership on the Board of Directors of Blue Shield. This information advised the public that Dr. Thomas A. Nicholas is now and at the time of the hearing in this case was a member of the Board of Directors of Blue Shield, one of the complainants. The record of the case discloses that Dr. Nicholas not only was a member of the Board of Medical Examiners, which heard the complaint against Dr. Walter W. Fallon, but he was also the chairman and presiding officer of the Board. The general rule, as stated in 31 C.J.S. Evidence § 9, pp. 824–826, is that courts will take judicial notice of matters of common knowledge. See also Rozelle v. Barnard, 72 N.M. 182, 382 P.2d 180, 181.

As stated in Nev-Cal Electric Securities Co. v. Imperial Irr. Dist., 9 Cir. (1936), 85 F.2d 886, 906, cert. den. 300 U.S. 662, 57 S.Ct. 493, 81 L.Ed. 871, if a fact is "openly and notoriously made known," it is to be presumed that it was known to the court. Also, in Palmer v. Mitchell, 57 Ill.App.2d 160, 206 N.E.2d 776, 779, it was said, the doctrine of judicial notice operates to admit into evidence, without formal proof, those facts which are a matter of common and general knowledge and which are established and known within the limits of the jurisdiction of the court.

In Wyoming, our court has recognized it to be common knowledge that horses are ridden in Frontier Days rodeo parades and have been so ridden for many years without injury to anyone. O'Keefe v. Cheyenne Chamber of Commerce, 56 Wyo. 170, 105 P.2d 279, 285. Also, the United States Circuit Court of Appeals, in a Wyoming case, Schoening v. Chicago, B. & Q. R. Co., 8 Cir. (1929), 30 F.2d 803, 806, took judicial notice that the Federal Government took over the Burlington Railroad

during the portion of time from 1912 to 1922.

The case of Dearborn Motors Credit Corp. v. Neel, 184 Kan. 437, 337 P.2d 992, 1002, indicates the test may be whether the fact may be disputed by competent evidence. In this particular instance, the fact of Dr. Nicholas' membership on the Blue Shield Board, at the time of Dr. Fallons' hearing, is so well known that competent evidence could only verify and not contradict such fact.

I an unable to point to other cases where courts have specifically held that judicial notice may be taken of membership on a board such as a Blue Shield Board. However, the supreme court of Washington in the case of In re Thacker, 35 Wash.2d 605, 214 P.2d 507, 514, took judicial knowledge of the reputations of certain persons sitting on the trial committee of the State Bar Association, among their fellow members of the bar, judges of courts and communities in which they resided and practiced their professions.

If the decision in this case hung solely on the question of whether it would be proper to take judicial notice of Dr. Nicholas' membership on the Blue Shield Board at the time of the hearing, I realize the question could and would be debatable. However, as I indicated at the outset, I consider the situation sufficient to justify my concurrence in the opinion of Justice GRAY.

There can be no denial that the most fundamental requirements of due process would dictate that Dr. Nicholas as a board member for Blue Shield was disqualified to sit on the board which was deciding the charges against Dr. Fallon. As stated in 1 Am.Jur.2d Administrative Law, § 63, pp. 859–860, the common-law rule of disqualification applicable to judges extends to every tribunal exercising judicial or quasi-judicial functions; and the rule has been applied or recognized in cases of suspension or revocation of licenses. For case authority to this effect see Board of Medical Examiners v. Steward, 203 Md. 574, 102 A.2d

248, 251–252; In re Heirich, 10 Ill.2d 357, 140 N.E.2d 825, 838, 67 A.L.R.2d 827, cert. den. Ericksen v. Bristow, 355 U.S. 805, 78 S.Ct. 22, 2 L.Ed.2d 49; and New Jersey State Board of Optometrists v. Nemitz, 21 N.J.Super. 18, 90 A.2d 740, 745, 749.

In the *Steward* and *Nemitz* cases cited in the preceding paragraph, recognition was given to the fact that the due process clause of constitutions guaranteeing to every person a fair hearing before a fair and impartial court applies to administrative agencies exercising judicial or quasi-judicial functions. In the *Heirich* case, the court said it is a classical principle of jurisprudence that no man who has a personal interest in the subject matter of decision in a case may sit in judgment on that case; and the principle is as applicable to administrative agents as it is to those who are technically judges in the full sense of the word.

Although the Wyoming Administrative Procedure Act was not effective at the time of the hearing before the Medical Board, provisions in the act give recognition to the principle that one with Dr. Nicholas' disqualification should not preside or participate in a decision such as the one made in this case. See §§ 9–276.29 and 9–276.30, W.S.1957, 1967 Cum.Supp.

For reasons which I have pointed out, coupled with reasons set forth in Justice GRAY's opinion, I agree the order and judgment of the trial court should be reversed with instructions to remand the case to the Board of Medical Examiners for rehearing. If the new hearing is to be fair and impartial, persons holding an official position in one of the complainant organizations, such as a member of its board of directors, should not preside or participate in making a decision.

Justice PARKER, dissenting.

I cannot agree that either fundamental principles of justice and fair play or any violation of legal tenets requires the reversal and remand of this case. The licen-

see was first given an opportunity to correct his allegedly improper practices, then asked to explain, and finally to defend them before a board of his fellow doctors. At the hearing he was represented by two leading law firms that had previously filed a written response to the complaint indicating that he fully understood what he was expected to meet. Before any testimony was taken it was stipulated that proper notice had been given. A review of the record discloses both the objectivity and the sincerity of the doctors who took part in the unpleasant duty of administering discipline to one of their fellows, and the penetrating questions that the board members asked, sua sponte, reflected not only their own qualifications in the profession but also their recognition of the licensee's improper practices and the long delayed reports, which were productive of and a cover for the misconduct. The malfeasance is readily apparent from the record, and it is surprising that the discipline resulting from the hearing should have been minimal, as it was.

Notwithstanding statements to the contrary, the findings of the board reported in the court's opinion recited basic facts, sufficient in law under the requirements heretofore pronounced by the United States Supreme Court when Mr. Justice Cardozo said, "We must know what a decision means before the duty becomes ours to say whether it is right or wrong." United States of America v. Chicago, Milwaukee, St. Paul & Pacific Railroad Company, 294 U.S. 499, 55 S.Ct. 462, 467, 79 L.Ed. 1023, 1032. In the instant situation the findings of the board are clear and any disparagement of the proceedings for their insufficiency is unwarranted.

Aside from the matter of findings, it would profit little to here present rebuttals for the reasons given as justifying the reversal and remand. Suffice to say that the statute authorizing the board to revoke or suspend the license of a person to practice medicine, § 33–340, W.S.1957, is most general, and prior to the time of this hearing

neither the legislature nor this court had seen fit to establish applicable procedure. In the future, of course, such hearings will be governed by the Administrative Procedure Act and Rule 72.1, W.R.C.P.

The results of a fair and objective disciplinary proceeding, which has withstood the careful scrutiny of a trial court, should not be frustrated except for a most serious and patent miscarriage of justice—not disclosed by the record in this case. Certainly everyone will agree that professional men and women can more effectively and fairly police their own ethical behavior than can those from other walks of life or administrative agencies, and few should be willing to approve an arrangement whereby judicial bodies assume to be the arbiters of such internal problems or overthrow disciplinary action for technical reasons.

I would affirm the judgment of the trial court.